SCHOOL CITY OF TERRE HAUTE v. HARRISON SCHOOL
TOWNSHIP OF VIGO COUNTY.

[No. 22,855.   Filed May 17, 1916.]

1. CONSTITUTIONAL LAW.—*Determination of Constitutional Question.
—Demurrer to Complaint.—Presumptions.*—The Supreme Court
will not determine a constitutional question if the decision can rest
upon other grounds; and where a demurrer, which was sustained to
a complaint challenges the complaint, among other causes, for al-
leged unconstitutionality of a statute relied on, it will be presumed,
if the demurrer is sustainable on other grounds, that the court
sustained it on such grounds, rather than on the ground that the
statute is unconstitutional.   p. 745.

2. SCHOOLS AND SCHOOL DISTRICTS.—*School Funds.—Title to Funds.
—Title to Funds Apportioned by State.—Trusts.*—The school fund
from which the tuition revenue is derived belongs to the State and is
administered by the State in the exercise of its sovereign power for
its own benefit, and while the fund and income therefrom con-
stitute a trust in that it must be devoted to the single purpose of
maintaining common schools, such fund is not a trust fund in the
full sense of the word, since the State holds the legal title to the
fund and administers it through its agencies primarily for its own
benefit, and though the school children are incidentally benefited,
they are not beneficiaries in the sense that they either collectively
or individually have any equitable title therein. (*State, ex rel.* v.
*Board, etc.* [1883], 90 Ind. 359; *Board, etc.* v. *State, ex rel.* [1885],
103 Ind. 497; *State, ex rel.* v. *Board, etc.* [1892], 5 Ind. App. 220;
*Inglis* v. *State, ex rel.* [1878], 61 Ind. 212; *Bocard* v. *State, ex rel.*
[1881], 79 Ind. 270; *Rowley* v. *Fair* [1885], 104 Ind. 189; and
*School Town* v. *School Township* [1882], 86 Ind. 582, distinguished.)
pp. 745, 748, 750.

3. SCHOOLS AND SCHOOL DISTRICTS.—*School Funds.—Administration.
—State Agents.*—The various officers through whose hands the
tuition revenue of the State passes from its origin to its final dis-
position and expenditure are agents of the State assisting in the
administration of the trust.   p. 747.

4. SCHOOLS AND SCHOOL DISTRICTS.—*School Funds.—Local Funds.
—Trusts.*—The officer in whose hands a school fund raised by local
taxation is placed by law holds it as trustee for the local corporation
within whose limits the tax was levied.   p. 749.

5. SCHOOLS AND SCHOOL DISTRICTS.—*School Funds.—Erroneous
Distribution.—Recovery.*—Where a county auditor made an er-
roneous distribution of the school revenue apportioned by the
State, so that certain school corporations received more than they
were entitled to while others were deprived of the full amount to
which they were entitled, a school corporation thus deprived could

not maintain an action, after the funds had been expended, against another for the recovery of its share of the excess received by the latter, since such excess belonged to the State and its erroneous distribution and expenditure by the State's agents could create no liability against the school corporation. (*Jefferson School Tp.* v. *School Town* [1892], 5 Ind. App. 586, and *Center School Tp.* v. *State, ex rel.* [1898], 130 Ind. 168, distinguished.)  p. 751.

From Clay Circuit Court; *John M. Rawley*, Judge.

Action by the School City of Terre Haute against Harrison School Township of Vigo County,  From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Davis, Bogart & Royse*, for appellant.

*Louis Leveque, A. J. Kelley, Peter M. Foley* and *Thomas F. O'Mara*, for appellee.

LAIRY, J.—The school city of Terre Haute brought this action against Harrison School Township, both parties being school corporations located in Vigo County, Indiana.  The action arose out of an erroneous distribution by the auditor and treasurer of Vigo County of the school revenues of the State, apportioned to that county for tuition purposes by the State superintendent of public instruction.  In making the distribution of this fund among the school corporations of Vigo County, the auditor of that county apportioned it among them in such proportions as the number of children enumerated for school purposes in each of such school corporations bear to the whole number of school children enumerated in the county.  By this means, an equal *per capita* distribution of this fund was made with reference to the school population of the county without regard to the congressional school revenue belonging to the several school corporations affected.  The statute provides, "In making the said apportionment and distribution thereof, the auditor shall ascertain the amount of the congressional township school revenue be-

longing to each city, town or township, and shall apportion the other school revenue so as to equalize the amount of available school revenue for tuition to each city, town or township, as near as may be, according to the enumeration of children therein, and report the amount apportioned to the superintendent of public instruction, verified by affidavit." §6475 Burns 1914, Acts 1897 p. 291.

The Congress of the United States gave the sixteenth section of land in each congressional township to the inhabitants thereof, for the support of common schools. These sections were of unequal value and on sale produced unequal amounts, even relating to the number of children of school age in such townships. The distribution of this fund is not, therefore, uniform; but, on account of the terms of the grant, the legislature of the State has no power to change it. *State* v. *Springfield* (1854), 6 Ind. 83; *Quick* v. *Whitewater Tp.* (1856), 7 Ind. 570. The provisions of the statute require the auditors of the several counties of the State to take into account the congressional school revenue of each of the school corporations in making the distribution of the other tuition revenue of the State, and to apportion the latter fund in such a way as to make the aggregate amount from the two sources in each of such school corporations equal in proportion to the number of children of school age enumerated therein. By failing to take into account the congressional school revenue of the several school corporations of the county, the auditor of Vigo County distributed to some of such school corporations more of the tuition revenue received from the State than they were entitled to receive under the statute, and to others for the same reason, he distributed less than they were entitled to receive. This erroneous distribution began with the January distribution in 1904, and was

kept up to and including the July distribution of 1910. The tuition funds thus distributed were received by the various school corporations and expended by them for tuition within the years for which the several distributions were made. The complaint alleges, that, during the period mentioned, more than $13,000 of these funds which should have been distributed to the school city of Terre Haute were erroneously distributed to other school corporations of. Vigo County and expended by such corporations for tuition purposes. It is alleged that Harrison School Township received more than its distributive share, and this action was brought to recover the part of such overpayment which, originally, should have been distributed to the school city of Terre Haute.

The questions presented on appeal arise upon the ruling of the court in sustaining the demurrer of appellee to the amended complaint. One of the grounds of demurrer as stated in the memorandum filed therewith is that §6475 Burns 1914, *supra*, is unconstitutional. It is well settled that this court will not determine a constitutional question if its decision can rest upon other grounds. *Cleveland, etc., R. Co.* v. *Hollowell* (1909), 172 Ind. 466, 88 N. E. 680; *Hewitt* v. *State* (1908), 171 Ind. 283, 86 N. E. 63. If the decision of the trial court can be sustained on other grounds, it will be presumed that the complaint was held insufficient on those grounds and not for the reason that the statute upon which appellant relies was unconstitutional.

Appellant seeks to uphold the complaint on the theory that the tuition revenue of the State which is apportioned twice each year belongs to the school corporations of the State to which the statute provides it shall be distributed. It

is asserted that the auditor of Vigo County held the fund apportioned to that county as a trustee for the various school corporations therein located and that it was his duty to distribute it in accordance with the statute, and that a school corporation, which, by mistake received and expended more than its distributive share is liable as to such excess to other school corporations of the county which received less than their respective shares, which liability may be enforced in an action for money had and received. The proposition is thus stated in appellant's brief. "Where a person has received funds which in equity and good conscience are the property of another, the person to whom the fund equitably belongs may recover from the person receiving the funds the amount by which the person receiving them has been unjustly enriched at the expense of the owner of the funds in an action for money had and received."

It has always been the policy of this State to encourage education, upon the theory that knowledge and learning generally diffused throughout a community is essential to the preservation of a free government. Constitution of Indiana, 1816, Art. IX, §1. Section 2 of the same article of our first Constitution made it the duty of the General Assembly to provide by law for a general system of education ascending in a regular gradation from township schools to a state university, wherein tuition should be *gratis* and equally open to all. The Constitution of 1851 made it the duty of the legislature to provide for a general and uniform system of common free schools, and also provided for the creation, investment and preservation of our common-school fund, the income from which was to be inviolably appropriated to the support of common schools and to no other purpose. Based upon these provisions of the

Constitution and fostered by laws passed in pursuance thereof, our system of free common schools has developed until it has become a source of pride to every citizen of the State. Constitution, Art. 8, §§1, 2.

There can be no doubt that public education is a function of the State. The State in its sovereign capacity has a direct interest in the enlightenment and mental development of its citizens to the end that free popular government may be preserved and may attain its highest efficiency. The school fund from which the tuition revenue is derived belongs to the State and it is administered by the State in the exercise of its sovereign power for its own benefit. The school children are incidentally benefited, but the primary purpose of the State in maintaining this fund and in expending its income in the education of its children is to develop and secure to the State a moral, intellectual and enlightened citizenship. While the fund and income therefrom constitute a trust, in the sense that it must be devoted to the single purpose under the provision of the Constitution—that of maintaining common schools—still it is not a trust fund in the full sense of the word. In ordinary trusts, the legal title to trust property rests in the trustee and the beneficial interest or equitable title is in the *cestui que trust*. Here the State holds the legal title to the fund and administers it through its agencies primarily for its own benefit. While the school children of the State are incidentally benefited by the administration of the trust, they are not beneficiaries in the sense that they either collectively or individually have any equitable title therein.

The legislature has passed statutes providing for the manner in which this fund shall be administered and the various officers through whose hands the tuition revenue passes from its

origin to its final disposition and expenditure are agents of the State assisting in the administration of the trust. The judicial decisions of this State and of other jurisdictions sustain the views herein expressed. *State, ex rel.* v. *Haworth* (1890), 122 Ind. 462, 23 N. E. 946; *Wood* v. *State, ex rel.* (1900), 155 Ind. 1, 55 N. E. 959; *State, ex rel.* v. *McClelland* (1894), 138 Ind. 395, 37 N. E. 799; *Township* v. *Carey* (1859), 27 N. J. L. 377. In the last case cited the supreme court of New Jersey says, "But again, as regards the funds derived from the state, the freeholders, the township collectors, and the superintendents are but the conduit pipes from the state treasury to the local teachers, and they are just as much the property of the state after they get into the hands of the school superintendent as they were in the state treasury; and the fact that, in going down, they happen to flow through the hands of the township collectors, gives the township corporations no rights in the fund." In *State, ex rel.* v. *McClelland, supra*, this court says, "It is a mistake to suppose that a distribution of school revenue to the school corporations of the State changes the title or ownership of the money. The persons to whom the money is entrusted and to whom it is delivered hold it as agents of the State, and the State does not lose its control over it until it is paid out for tuition purposes."

Certain cases cited by appellant as sustaining the proposition that the State and county hold and administer the school funds as trustees of an express trust for the benefit of the school children of the State require consideration. *State, ex rel.* v. *Board, etc.* (1883), 90 Ind. 359; *Board, etc.* v. *State, ex rel.* (1885), 103 Ind. 497, 3 N. E. 165; *State, ex rel.* v. *Board, etc.* (1892), 5 Ind. App. 220, 32 N. E. 92. An examination of these cases will show that they go no

further than to hold that the school fund is held in trust for a particular purpose and that it cannot be diverted to any other than that to which it is devoted. All of these cases were actions by the State on relation of the attorney-general to recover school funds which had been diverted from the purpose for which the fund was created. In the case of *State, ex rel.* v. *Board, etc.* (1883), 90 Ind. 359, the court uses language which, standing alone, would seem to indicate that the State and its officers hold the fund in trust for the benefit of the school children of the State, but this language was not necessary to the decision, and in view of the later expressions of this court on the subject, it must be deemed to have been used inadvertently. These cases are not inconsistent with the theory that title to the school fund and the income therefrom is in the State and that the officers through whose hands it passes on the way to final expenditure are the agents of the State and not trustees for the school corporation or for the school children of such corporation. A distinction

4. must be observed, however, between a fund raised by local taxation either for tuition purposes or for any other purpose. As to such a fund, the officer in whose hands the custody of such fund is placed by law holds it as trustee for the local corporation within whose limits the tax was levied. The reason for this distinction is obvious and it has been recognized by the legislature as well as by the courts of this State. Section 6407 Burns 1914, Acts 1883 p. 118, provides: "The school trustees of every township, incorporated town or city shall receive the special school revenue *belonging thereto*, and the revenue for tuition *which may be apportioned* to his township, town or city by the state for tuition or the common schools, and shall pay out the same for the purpose for which such revenues were

collected and appropriated." Section 6408 Burns 1914, §4442 R. S. 1881, is as follows: "The trustees shall keep a record of their proceedings relative to the schools, including all orders and allowances on account thereof; including, also, accounts of all receipts and expenditures of school revenue, distinguishing between the special school revenue *belonging to their township, town or city*, and the school revenue for tuition *which belongs to the slate*, and by it apportioned to their township, town or city." These statutes observe the distinction between revenue raised by local taxation and the tuition revenue which belongs to the State.

The cases of *Inglis* v. *State, ex rel.* (1878), 61 Ind. 212; *Bocard* v. *State, ex rel.* (1881), 79 Ind. 270, and *Rowley* v. *Fair* (1885), 104 Ind. 189, 3 N. E. 860, were actions involving the liability of trustees on bonds. In these cases it was held that, as between the trustee and his bondsmen on the one hand and the township on the other, the trustee would be regarded as the legal owner of the money in his hands and that he was absolutely liable for its loss. As was said in the case last cited. "But the title of a township trustee in the money for which he is held accountable is only recognized to the extent that is necessary for the better preservation of the various funds which the money represents, and is, in fact, a legal title only in a technical and very limited sense." These cases lend little support to the theory of appellant and do not in any way conflict with the principles stated in this opinion. The case of *School Town* v. *Plain School Tp.* (1882), 86 Ind. 582, also cited by appellant, can be readily distinguished from the case at bar on the ground that it involved the ownership of a school building erected by local taxation.

It is the policy of the statutes of the State that

the tuition revenue of the State shall be apportioned among the several counties in proportion to the children of school age enumerated therein; and that the fund apportioned to each county shall be distributed among the school corporations of the county in the manner heretofore indicated in this opinion. By this means the public tuition fund, consisting of this fund in connection with the congressional school fund, is equalized as nearly as possible among the school corporations of the State in proportion to the children of school age enumerated therein, and the law contemplates that it shall be expended annually for the education of the children of the school corporation to which it is finally distributed. So long as the fund remains unadministered in the hands of any of its agents, it is under the control of the State, and the State will lend its aid to enforce the proper distribution and administration of the fund. It has been held accordingly, that the trustees of a school town within a township may compel by mandamus the trustee of the township to turn over to them the portion of the tuition revenue of the State in his hands which they, under the statute, were entitled to control and administer. *Johnson* v. *Smith* (1878), 64 Ind. 275. In this case it will be observed that the fund was still unexpended and that the title to the fund was not involved, but only the right to control and administer it. In the case at bar, the fund is no longer in existence. It has been fully administered by the State through its agents and expended in the education of the children of the State. It is true that the fund apportioned to Vigo County was not distributed among the school corporations of that county and expended therein in exact accordance with the statute, but that inequality can not be remedied after the fund has been fully administered

by the State. The excess of the tuition revenue which was distributed to the trustee of Harrison School Township was the property of the State and did not belong to the school city of Terre Haute or to any other school corporation. Such trustee received it as the agent of the State and not as a representative of Harrison School Township, and in expending it he acted as an agent of the State in the administration of the fund. The school city of Terre Haute has no right to recover a judgment for any portion of the fund erroneously distributed and expended, and the taxpayers of Harrison School Township can not be required to answer for money which an agent of the State erroneously expended for the benefit of their schools.

Appellant relies with confidence on the cases of *Jefferson School Tp.* v. *School Town* (1892), 5 Ind. App. 586, 32 N. E. 807, and *Center School Tp.* v. *State, ex rel.* (1898), 150 Ind. 168, 49 N. E. 961, as sustaining its position. Neither of these cases involved any question relating to the tuition of the State. The first of these cases involved the right of a school town to recover a judgment against the school township for the amount of certain special school revenue and tuition revenue which was the proceeds of a local tax levied by the town for such purposes and which had been erroneously turned over by the county treasurer to the trustee of the township and had been expended by him for the township school corporation. In the second case, the State of Indiana on relation of the school board of the city of Indianapolis brought an action against the trustee of Center School Township to recover for its portion of the dog tax fund all of which had been received and expended by the trustee of the township. A judgment in favor of the relator was affirmed on appeal. In view of what has been said as to the dis-

tinction to be observed between revenue raised by local taxation and the tuition revenue of the State arising from the income on the common-school fund, it will readily appear that these cases can not be regarded as decisive of the question here involved.

The demurrer to the amended complaint was properly sustained. Judgment affirmed.

NOTE.—Reported in 112 N. E. 514. See, also, under (1) 4 C. J. 652, 747, 748; 3 Cyc 223; (2) 35 Cyc 825; (3) 35 Cyc 826; (4) 35 Cyc 822.