The plaintiff had judgment against the defendant in the sum of $8,213.84, together with interest thereon at the rate of seven per cent from the date of entry of judgment, in an action for money had and received by the defendant for the uses and purposes of the plaintiff, based upon allegations that the defendant had collected and had the use and benefit of certain moneys raised by taxation which should have been had, obtained and enjoyed by the plaintiff. From this judgment the defendant appeals.
After alleging the existence of the two High School Districts named in the title to this action, the complaint sets forth that on the fourth day of February, 1925, a certain *Page 445 
school district, known as the "Bunker Hill School District," formed under the laws of the state, was situate entirely within the exterior boundaries of the Fall River Joint Union High School District, in the county of Shasta; that on the same date, that certain school district, known as "Kosh Creek School District," was an elementary school district situate entirely within the boundaries of the Shasta Union High School District in the county of Shasta; that the boundary line between the two elementary school districts constituted the boundary line between the two High School Districts; that on the fourth day of February, 1925, the board of supervisors of the county of Shasta made an order purporting to transfer to the Kosh Creek School District certain lands and premises theretofore situate within the Bunker Hill School District. This order, if effective, would have transferred from the Fall River Union High School District to the Shasta Union High School District, the lands and premises described in the plaintiff's complaint.
It is further alleged in the complaint that in making the order of transfer, dated February 4, 1925, the board of supervisors did not comply with the requirements of the Political Code, and that thereafter, and in the month of November, 1928, after an action had been prosecuted in the Superior Court of Shasta County for that purpose, a judgment was entered declaring the purported transfer of property from the Bunker Hill Elementary School District to the Kosh Creek Elementary School District, null and void. The complaint then sets forth that during the years intervening between the purported transfer of the lands described in the complaint, and the entry of judgment adjudging the transfer null and void, Shasta Union High School District collected in taxes on the property involved in the transfer the following sums, to wit: For the year 1925, $3,834.57; for the year 1926, the sum of $1151.87; for the year 1927, the sum of $3,019.50; for the year 1928, the sum of $207.90; aggregating a total of $8,213.84. The complaint contains no allegations that the plaintiff did not receive, during said years, all of the money necessary to maintain its Union High School District, nor is there any allegation in the complaint that the plaintiff did not receive, during said period of time, all of the moneys that had been collected for the uses and purposes of the Fall River Joint *Page 446 
Union High School District; nor is there any allegation in the complaint that the Shasta Union High School District received any moneys that were not necessary for the support of its high school; nor is there any allegation in the complaint that the Shasta Union High School District received any money not intended for its uses and purposes; nor that any taxes were levied upon the property involved in the transfer, that were not intended for the uses and purposes of the Shasta Union High School District.
The appellant demurred to the plaintiff's complaint on several grounds, one of which was that it did not state a cause of action. The demurrer being overruled, the appellant declined to amend, and judgment was entered in favor of the plaintiff for the amount sued for.
The respondent, in support of the judgment in its favor, makes the following contention: "That there is but one question involved in this appeal, and that is whether an action for money had and received will lie to recover from a high school district moneys which it has received from taxes for High School purposes, assessed and collected upon lands wholly outside of its boundaries, and wholly within the boundaries of plaintiff district." This, however, is not a full or complete statement of the issues involved. [1] The question really at issue is whether money received by one district, from lands apparently but not legally within its exterior boundaries, levied and collected for its uses and purposes and devoted to its uses and purposes, can be recovered by a district within whose territory the lands actually lie, where no levy has been made or taxes collected for its uses and purposes, and where both districts involved obtained exactly the amount of moneys for which their budget called, and neither district obtained or had the use of money intended for the other.
During the time involved in this action sections 1756 and 1757 of the Political Code specified that the school board of every high school district should file with the board of supervisors annually, at the time specified in the section, an estimate of the amount of money required for maintaining the high school district for the current school year. Section 1756, supra, sets forth how the items shall be stated on the estimate, and the procedure that shall be taken preceding the actual levy of the taxes, and that after the estimate *Page 447 
has been properly passed upon by the county school superintendent, the board of supervisors shall proceed to levy a tax upon the property in each school district sufficient to raise the amount of the estimate determined as necessary for the maintenance of the school for the current year. Section 1757,supra, provides for the levy of a special tax. All of the moneys to be raised by taxation are paid to the county treasurer, and by him allotted to the respective school districts for which the tax has been levied and the moneys collected.
Before beginning a review of the authorities relied upon by the respondent, we may state that the complaint fails to show that the plaintiff suffered any deficit in its school funds, or that the defendant obtained any surplus in its school funds by reason of the levy and collection of taxes upon the properties mentioned in the complaint. The contention in this case appears to be based upon the theory that each high school district has an inherent right to all moneys collected by way of taxation upon lands lying within the exterior boundaries of its district, whether or not the levy and collection of such moneys was intended for, or had for its uses and purposes, and whether it did or did not receive all the money set forth as necessary in its estimate, and irrespective of whether there was or was not a deficit in its funds, and whether there was or was not a surplus in the funds of the district for which the tax was levied and collected.
This is not a case where taxes were levied and collected for one district, and by mistake, turned over or paid to another district. So far as the complaint is concerned, each district in this action had and enjoyed all the money necessary for its uses and purposes, and no money was paid by mistake to the appellant, derived from taxes levied and collected for the uses and purposes of the plaintiff, as no such taxes were levied or collected.
With these statements in view we will now consider the cases cited as supporting the ruling of the trial court. In the case ofIndependent School District of the Town of Kelley v. SchoolTownship of Washington, 162 Iowa, 42 [143 N.W. 837, 840], it was held that where the county treasurer, by mistake, paid school taxes levied upon property in one district for school purposes and for the contingent *Page 448 
and teachers' funds, to an adjoining district, the district in which the land was located could recover the sum so paid by an action for money had and received. An examination of this case shows that a tax was levied and the money collected for the uses and purposes of the plaintiff, and by mistake of the treasurer, credited to the defendant district. In the opinion of that case we find the following: "We think the language used in theDistrict Township of Spencer v. District Township ofRiverton, 56 Iowa, 85, 88 [8 N.W. 785], is apropos to the discussion here. This was an action by the plaintiff district to recover of the defendant district certain moneys which it was claimed had been paid by the treasurer of the county from moneys belonging to the plaintiff, by reason of which defendant district received or would receive more than it was entitled to. . . . We come, then, to inquire whether, as the treasurer made a mistake, the plaintiff had any equitable claim upon the defendants. In our opinion it has. The treasurer was charged by law with the duty of refunding a portion of the tax from the funds belonging to the defendants. By a mistake respecting his duty he refunded the whole from funds belonging to the plaintiff. By reason of that mistake the defendants have received, or will receive, from the treasurer, more funds than they were entitled to. A court of equity, it appears to us, has the power to rectify the mistake and properly adjust the burden by compelling a contribution." Nothing of that kind appears in this case. The funds belonging to the respondent have not been depleted, and the funds belonging to the appellant have not been augmented to any degree, or the estimates submitted by the respective districts to the board of supervisors as to the funds necessary to maintain their schools, in anywise departed from. An examination of the case of DistrictTownship of Spencer v. District Township of Riverton, supra,
shows that it is based upon an error of the treasurer in paying to one school district funds derived from a tax levy made for the uses and purposes of another district.
In Independent School District No. 5 v. Solon IndependentSchool District No. 8, 162 Iowa, 686 [144 N.W. 592], the question involved was whether sums paid by one district to another, for and on account of the tuition of pupils supposed, at the time of payment, to be residing in the defendant *Page 449 
district, but who were afterward found to be actually residing within the plaintiff district, could be recovered. It was so adjudged. Here, the money was paid under mistake, and the defendant district had the uses and benefits of tuition fees that should have remained in the treasury of the plaintiff. In other words, the funds of one district were improperly augmented at the expense of the other district, and equity, of course, necessarily required a refund.
In the case of Board of Trustees of Graded Free Colored CommonSchool of Mayfield v. Board of Trustees of Graded White CommonSchool of Mayfield, 181 Ky. 303 [204 S.W. 86], the only question involved was one of a division of school moneys between schools maintained for white and colored pupils, based upon statutes relating to the same and not applicable to any issues involved herein.
In the case of School District No. 9, Town of Lake, v.School District No. 5, Town of Lake, 118 Wis. 233
[95 N.W. 148], the questions involved related to a division of tax moneys, where the districts had been divided after the levy of the tax. This statement, of course, shows it is inapplicable to the issues here presented.
In Center School Township v. State ex rel. Board of SchoolCommrs., 150 Ind. 168 [49 N.E. 961], the questions involved had to do with the distribution of moneys received from a certain dog tax. The facts show that one district received a surplus portion which should have been distributed to a different district. It was really an action to require a division of funds, and not an action to recover funds which had been provided for the support of a defendant district.
In Jefferson School Township of Greene County v. School Townof Worthington, 5 Ind. App. 586 [32 N.E. 807], it is held that a proper remedy for a school town to recover taxes appropriated to it, but paid by the county treasurer to the trustees of a school township, and converted by such township, is an action against the township, and not by mandamus either against the county treasurer or trustee. With this statement of the law we readily agree, but the facts involved are clearly distinguishable from the case at bar. In the case at bar, as we have heretofore stated, the taxes were levied and the moneys collected for the uses and purposes of the appellant, and were not levied and collected *Page 450 
for the uses of the respondent, and improperly apportioned. A few excerpts from the case of the Board of Commissioners of CarterCounty v. Joint School District No. 34, etc., 134 Okl. 140 [272 P. 468], show that the facts considered therein are readily distinguishable from the circumstances presented in the case at bar. In the opinion of the case just referred to we find the following: "The proper remedy for a school town to recover taxes apportioned to it, but paid by the county treasurer to the trustee of a school district, and converted by such township, is by action against the township, and not by mandamus against either the county treasurer or trustee." (Italics are ours.) The word which we have italicized discloses the fact that the moneys collected had been apportioned to one district and erroneously paid to another. This, of course, would leave a deficit in the funds of one district and create a surplus in the other. The opinion further quotes from 37 Cyc. 1592, the familiar rule that "a city or other municipality may maintain an action at law against the county which has collected taxes for it and failed to pay them over." This in nowise supports the respondent's contention. The cases seem to be uniform that where an officer collects taxes belonging to a district or city, and pays the same to the wrong district or to the wrong municipality, that the amounts so wrongly apportioned or paid over may be recovered. Thus, in the instant case, if the taxes had been assessed and collected for the purposes of the respondent district, and erroneously paid over to the officers of the appellant district, an action would lie by the respondent district to recover such funds from the appellant district. The record would show upon its face a surplus in favor of the appellant and a deficiency of funds on the part of the respondent.
Finally, respondent urges upon our attention the cases ofSchool District No. 127 v. School District No. 45 of RenoCounty, 80 Kan. 641 [103 P. 126], and the case of SchoolDistrict No. 8, Shawnee Township, v. Board of Education ofKansas City, 115 Kan. 806 [224 P. 892]. The latter case is based in part upon the decision in the former case, and upon a statute bearing upon the correction of errors in the apportionment of school funds to which we will refer. There is also a distinct difference between the opinion in the Reno County case and in the facts involved in the *Page 451 
Shawnee township case, which apparently was overlooked by the court in the latter case.
In the case of School District No. 127 v. District No. 45,supra, it appears that both districts had levied a tax upon a disputed territory claimed to be within the exterior boundaries of each district. One had levied an assessment at the rate of thirteen mills, and the other at the rate of twenty-five mills on the dollar. District No. 127 collected the sum of $321.13. The court determined that the strip of land involved lay within the exterior boundaries of District No. 45, and held that District No. 127 should refund the sum of $321.13 collected by it. The record in that case also shows that all the parties had full knowledge of the circumstances, which, of course, included the fact that District No. 127 had full knowledge that it was levying a tax upon land outside of its district. The record also shows that the county treasurer had knowledge of the circumstances involved, and that he had no right to pay the money over to the wrong district. Here, District No. 45 had made an estimate of the moneys necessary to maintain its educational facilities, had levied a tax upon the property within its territorial boundaries, and was entitled to the amount of revenue to be derived from taxation upon the territory in question, and unless it received the same, while it does not appear to be mentioned in the opinion, there would necessarily have been a deficit in its funds. District No. 45 was suing for something of which it had been deprived. In the case at bar such fact does not appear.
In the case of School District No. 8, Shawnee Township, v.Board of Education of Kansas City, supra, the facts show that the taxes were levied on property in one district, for the purposes of that district, and through mistake paid to the officers of another district. In the decision of this case we find that the court refers to the revised statutes of the state of Kansas, quoting a section which is too lengthy to be inserted here, but which statute provides that the county clerk, previous to a certain date of each year therein mentioned, is empowered to correct errors in the apportionment of taxes and in fixing the situs of both personal and real estate, and also providing for the refunding of money if errors are discovered and claims made for refund, or a transfer from one district to another, or rather, *Page 452 
to the proper district or municipality, of the funds to which it is entitled.
In addition to setting forth the statute relative to the correction of errors, the court also relies upon the case ofSchool District No. 127 v. School District No. 45, supra,
mentioning the fact of the property being detached from one district and attached to another, and fails to point out the difference between the facts of that case and the circumstances involved in the Shawnee case, to wit, that in the case ofDistrict No. 127 v. District No. 45, supra, the taxes were levied by and for the uses and purposes of the district claiming the same, and that in the Shawnee case, taxes levied for one district were collected and improperly paid over to another district. Neither of these cases involves the question of whether money, where taxes have been levied and collected for the uses and purposes of a particular district, after the same have been devoted to the uses and purposes of the district for which they are collected, should be paid over to an adjoining district because the orders of the board of supervisors in making a transfer of territory from one district to the other, was subsequently adjudged void.
Respondent quotes at length from the opinion in the Shawnee case, but after an examination of the facts involved in the case, and also of the case of District No. 127 v. District No. 45,supra, relied upon, it will be found that the quotation is the language and not the law of the case, and so far as the language is concerned, its reasoning is very clearly answered by the dissenting opinion, which, however, we do not quote as authority, but as illustrating what we have said as to misapprehension of the facts involved in the two cases cited to us as authority.
We will next consider the authorities upon which appellant relies. In 35 Cyc. 1037, the rule of law which appeals to us as being the proper one applicable to this case is thus stated: "One school district may recover from another district taxes which have been levied by the former and unlawfully collected by the latter; but a school district does not become a trustee for one taxpayer of an excessive amount collected from another taxpayer, and one school district cannot recover from another district taxes which, through a mistake as to location, have been levied by, and voluntarily *Page 453 
paid to the latter upon lands within the former district, although the tax rate, as extended in the former district, is thereby made greater than it otherwise would have been. But the fact that one school district unlawfully levies and collects taxes on land in another school district, does not prevent the latter from levying and collecting taxes on the same land." The latter statement applies to what was really involved in DistrictNo. 127 v. District No. 45, supra.
In 27 Ruling Case Law, 591, we find the following: "Where one school district collects by mistake, taxes on land lying in another district, the latter, if it can recover from the former at all, cannot recover more than the amount it would have received had there been no mistake. So, where the rate of taxation in the former district is greater than the rate in the latter, the excess collected cannot be recovered by the latter district, nor can it recover at all if the full amount of the levy made by it on the lands in question has been received." It is then stated that the taxpayer cannot collect where the taxes have been voluntarily paid.
In the case of School City of Terre Haute v. Harrison SchoolTownship, 184 Ind. 742 [112 N.E. 514], the Supreme Court of Indiana held that "where the auditor of a county, in distributing the county's share of the tuition revenue of the state arising from the income on the common school fund, fails to take into consideration certain matters as required by statute, so that the trustees of some of the school corporations thereof receive more than their proportion, there is no liability on the part of such corporations, after expenditure of the fund, to the school corporations thereof which received less than their proper proportions." That case is similar to the conditions here prevailing, in that, while not so alleged in the complaint, it is evident that the school funds involved have all been consumed and used by the appellant district for the purposes for which the tax was levied and collected.
In Arthur et al. v. School District of Pope Borough,164 Pa. 410 [30 A. 299], the Supreme Court of Pennsylvania held that no recovery could be had where one school district unlawfully levies and collects taxes on lands lying in another district. We may state, however, in that case it is also *Page 454 
held that the second district might have levied and collected taxes. The point really involved, so far as the instant case is concerned, is that moneys derived from taxes levied upon lands, though not within its district, for the uses and purposes of the district levying the tax, may be contested by the land owner or taxpayer, but cannot be recovered by the district wherein the lands are situate, after the same have been collected and used for the purposes of the collecting district.
In the case of Walser v. Board of Education of SchoolDistrict No. 1, 160 Ill. 272 [31 L.R.A. 329, 43 N.E. 346], we have a case on all-fours with the questions presented upon this appeal. It was there held that "Where, by the mistake of the county clerk, real estate in fact located in School District No. 2 was entered upon the collector's books for a certain year, as in School District No. 1, and the property was taxed, and taxes were voluntarily paid to No. 1, and there applied, No. 2 could not recover the amount thus collected." To the same effect is the decision of the Supreme Court of Ohio in the case of Board ofEducation of Lyme Township v. Board of Education of SpecialSchool District No. 1, 44 Ohio, 278 [7 N.E. 12].
In Mabelvale Special School District v. Halstead SpecialSchool District, 169 Ark. 645 [276 S.W. 584], the Supreme Court of Arkansas held as follows: "A special school district, in a suit to recover taxes on disputed lands held not entitled to recover taxes which had been regularly, though erroneously distributed to another school district, and consumed in educational purposes, but to be entitled only to taxes in the hands of the treasurer at the time suit was commenced," etc.
In Carter Special School District v. Hollis Special SchoolDistrict, 173 Ark. 781 [293 S.W. 722], it was again held by the Supreme Court of Arkansas, in the opinion rendered in 1927, that a school district rightfully entitled thereto, could not recover school funds erroneously distributed to, and consumed in educational purposes by the district to which the funds had been apportioned.
In the case of School District No. 153 v. School DistrictNo. 154, 232 Ill. 322 [83 N.E. 849], the Supreme Court held, upon facts identical with those here presented, that "where property has been assessed for school purposes in *Page 455 
one district, and the taxes collected by that district, an adjoining district cannot recover the taxes from the first district on the ground that by mistake in making a map of the school district of the county, the property was assessed in the wrong district."
Somewhat to the same effect is the case of State ex rel.School Dist. v. Beale, 90 Mo. App. 341, where it was held that the judgment could only apply to taxes thereafter levied and collected, and that no refund of moneys already collected and used for school purposes, could be had.
If it be a fact, as contended by the respondent, that the taxpayers in the respondent district paid somewhat in excess of the moneys that should have paid, if the true situs of the territory involved had been known and assessed accordingly, the effective answer thereto is that so far as the record before us shows, all of the taxes were voluntarily paid, and the parties paying the taxes are not before us.
The appellant makes the further point that as each district has received the funds according to the estimate submitted by it, and that the contested funds have been used for educational purposes, the finances of the district ought not to be disturbed by any judgment ordering a refund, and that to do so would be inequitable, as all the parties herein acted in good faith. From what we have said, however, it is apparent that the judgment of the trial court must be reversed, and, therefore, we need not consider the question of a disarrangement of the funds of the respective districts. We agree with the appellant that the complaint does not state a cause of action, and in view of what we have said, it is evident that no cause of action can be stated.
It is therefore ordered that the judgment of the trial court be reversed, with directions to sustain the defendant's demurrer to the plaintiff's complaint, without leave to amend.
Thompson (R.L.), J., and Finch, P.J., concurred.
A petition for a rehearing of this cause was denied by the District Court of Appeal on April 10, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 8, 1930. *Page 456