**MILLER v. CHILDERS, State Auditor.**

No. 15523—Opinion Filed Sept. 9, 1924.

Rehearing Denied Oct. 14, 1924.

(Syllabus.)

**1. Schools and School Districts—Act Providing Aid for Weak Schools—Constitutionality.**

By the provisions of House Bill No. 19, chap. 103, Session Laws of 1924, entitled, "An act providing aid for weak school districts," etc., the state does not assume to pay the debt of any political subdivision of the state in violation of section 14, art. 10, of the state Constitution. The indebtedness to be paid by the moneys thereby appropriated is by the state lawfully assumed in discharge of the primary governmental duty imposed upon the Legislature by section 1 of art. 13 of the state Constitution "to establish and maintain a system of free public schools wherein all the children of the state may be educated."

**2. Statutes—Local and Special Laws—Act Providing Aid for Weak Schools.**

The provision of House Bill No. 19, chap. 103, Session Laws of 1924, entitled, "An act providing aid for weak school districts," etc., is general in its nature, operating upon every locality alike, thereby extending aid equally to like classes similarly situated, according to a reasonable classification as then or thereafter existing during the time covered by the act, and it is, therefore, not such a special or local law as is defined in article 5, sec. 32, of the state Constitution.

**3. Statutes—Appropriations — Specification of Fund.**

An act of the Legislature making an appropriation of state funds which is otherwise valid is not rendered void by the mere failure to recite therein the particular fund from which said moneys shall be paid, for in such event, the contrary not appearing in the act itself by express terms or by implication, such moneys are payable out of the general fund of the state unless payment from such fund is prohibited by the Constitution of the state.

Error from District Court, Oklahoma County; Wm. H. Zwick, Judge.

Action by Fred L. Miller against Charles C. Childers, State Auditor, and others. From the judgment, plaintiff appeals. Affirmed.

Langley & Langley and Courtland M. Feuquay, for plaintiff in error.

Geo. F. Short, Atty. Gen., Edwin Dabney, Asst. Atty. Gen., Wm. J. Holloway, Anglea & Crabb, and McPherren & Wilson, for defendants in error.

LYDICK, J. (1) This action was begun in the district court of Oklahoma county by Fred L. Miller to enjoin the State Treasurer and others from permitting moneys to be paid out of the state treasury under the provisions of House Bill No. 19, chapter 103, Session Laws of Oklahoma of 1924, entitled, "An act providing aid for weak school districts, making appropriation for the year ending June 30, 1924."

The plaintiff asserts that the act is violative of the provisions of our state Constitution, and therefore void. The lower court sustained defendant's demurrer to plaintiff's petition and dismissed his action, and he brings the case here on appeal.

(2) It is first urged by the plaintiff that by this act the state assumes to pay the debt of a municipal corporation or political subdivision of the state in violation of section 14, art. 10, of the state Constitution. It appears that the act did not become effective until June 15, 1924. The moneys appropriated by the act are directed to be used largely for the payment of the salaries of teachers in weak school districts. These teachers rendered such service under purported employment by their respective school

districts, and most of the services were rendered before the date when the act took effect. For these reasons the plaintiff says that the compensation to be paid them out of the moneys appropriated by this act was due by the school districts, and that by this act the state assumes to pay the debts of such school districts in violation of the constitutional provision to which we have referred.

(3) The act appropriates $650,000 to be paid through the agency of these weak school districts unto- teachers and others who, by services rendered, have earned the same. It is nevertheless effectively provided in the act that none of such money shall be paid to any such school district except where the maximum lawful levy of 15 mills has been made by such school district, and has been exhausted. The funds appropriated by the act, therefore, are used exclusively to pay only those expenses of maintaining schools in these districts which the districts themselves had no lawful power to contract to pay. They had no such power because such expenses here·assumed by the state were entirely in excess of the moneys to be derived from the levy made by the school districts, and, therefore, the school districts' officers were prohibited by law from obligating the school districts to pay them. Any such contract which may have been made by any such school district is a nullity, and the obligations which thereby the district agreed to pay were not lawful debts of the district. Such teachers could not have recovered judgment on such claims, and the officers of the district would have violated the law had they permitted same, at any time thereafter, to be paid out of the funds of the district. It follows, therefore, that in assuming to pay such claims the state did not assume the debt of any political subdivision of the state, and section 14 of art. 10 of the state Constitution is not violated.

(4) The state had the right, in the first instance, to contract this indebtedness. In a sense, it is a misnomer to label this appropriation as an aid to weak school districts. Less appropriately, it is true, but not without some reason might we designate as an aid to the state the school funds raised by a school district's own tax levy for the promotion of public school work. This we say for the very good reason that, under section 1 of art. 13 of the Constitution, the duty rests primarily upon the state Legislature **"to establish and maintain a system of free public schools wherein all the children of the state may be educated."** This implies an efficient and sufficient system,

with competent teachers, necessary general facilities, and school terms of such duration as may be necessary to properly implant in the minds of our youth such degree of learning that when the work is done they may be educated young men and women.

(5) "System," as here provided, indicates some degree of uniformity and equality of opportunity. The sovereign state has assumed the duty upon it imposed by the public policy of the day, of extending, in so far as it is practicable, equal rights and privileges to all its youth to obtain such mental and moral training as will make them useful citizens of our great commonwealth. In the case of Board of Education v. State, 26 Okla. 366, 109 Pac. 563, we held this to be "an imperative governmental duty." The sovereign state and we as citizens are as much interested in the education of a youth in a remote part of our state as of one who lives in our capital city, because this interest is based upon the child's relation to society generally, of which we form a part.

The state Legislature may, where not otherwise limited by organic law, choose its own agencies and methods for this work. It has chosen the school district officers and teachers who did the work of the school district to do the added work which it ordered to be done. The Constitution has specifically authorized each school district to levy and collect a 15-mill tax levy to be by it expended in carrying on this work. There the Constitution terminates the expenditure by a school district, and from there, where the school district's work must end, the Legislature must "carry on" to the point where we can say that there is satisfied the constitutional mandate for the maintenance of a free public school system. The Legislature, with authority so to do, has said an eight-months' annual school term is necessary. Affirming its decree, we adopt its judgment as our own. With the maximum levy expended, many school districts will have perhaps only a three-months' term, while others may have a twelve-months' school if they so desire. Without affirmative aid by the Legislature the constitutional mandate for an efficient free school system will be unexecuted in those weak school districts.

From the general revenue fund of the state must the Legislature expend as much money in the school district with a twelve-months' term already provided as in the poor district, able to afford from its own resources only a three-months' term? If so, public funds will be wasted on the strong

districts, or no sufficient schooling provided in weaker districts, and the constitutional mandate will be disobeyed. The question answers itself. If from the state's general revenue fund or other state funds all the expenses of all school districts were paid, the taxpayers of the wealthier districts would be furnishing part of the funds for the poorer districts. As long as the Constitution requires public funds to be raised by tax levies equally applied to all property, the rich must thereby aid the poor, if an efficient and uniform system of free public schools be maintained throughout the state as by the Constitution required.

And so we hold that under this constitutional mandate, the state Legislature has the power—and, in fact, unless some other way be found to properly maintain in all parts of the state an efficient free public school system, it owes it as a duty—to appropriate from available state funds the money necessary to enable each school district to maintain a reasonable school term each year, from the point where its maximum lawful and available resources have been expended.

We refer to somewhat analogous cases as follows: School City v. Harrison School Dist. (Ind.) 112 N. E. 514; State v. Gordon (Mo.) 170 S. W. 892; Trustees of Rutgers College v. Morgan (N. J.) 57 Atl. 250; Miller v. Korns (Ohio) 140 N. E. 773; Fuller v. Heath, 89 Ill. 296.

Even in the absence of this mandate of our organic law, the Legislature would have this power, because it is provided in section 36, art. 5, of the Constitution that:

"The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation or exclusion of such authority upon the same or any other subject or subjects whatsoever."

While the Congress of the United States may do only that which the federal Constitution has granted unto it the power to do, the Legislation may, in a general sense and as to rightful subjects of legislation, do all except that which by the Constitution it is prohibited from doing. See Cooley's Constitutional Limitations, 241-242.

It is true that the teachers to be paid by this act rendered their service before the date when the act became effective, to wit, 90 days from its passage and approval by the Governor. The services, however, for aught that appears in the pleadings, were rendered after the act had been properly

enacted. For years the Legislature had been providing for such services in similar manner, and these teachers rendered these services in good faith, depending upon the Legislature to do its constitutional duty in the premises, and through which the state would acknowledge its laborers to be worthy of their hire. And, so, for the good reasons stated, we hold that the act of the Legislature in assuming to pay these obligations was one calling for the exercise of its own wisdom and discretion, and which it is not within our province to disturb. The act is not violative of article 10, sec. 14, of the state Constitution.

Plaintiff complains that the act is a special or local law, and is void because notice of its introduction in the Legislature was not advertised as is required of such bills by article 5, sec. 32, of the state Constitution. He fails to support this contention by arguments or authorities. Under the rules of this court he has waived his right to demand our consideration of this proposition, but we are prepared to hold the point is not well taken. The act makes the appropriation available in all school districts in the state where, under the restriction of the Constitution, such districts are unable to maintain the public schools for such length of terms as the Legislature, acting within its constitutional authority and the exercise of sound legislative discretion, has declared must be provided. The classification is a reasonable one. The act applies to all then or thereafter coming within the classifications, and is not violative of the section of the Constitution to which we have referred. See Ex parte Anderson, 33 Okla. 216, 124 Pac. 980; Guthrie Daily Leader v. Cameron, 3 Okla. 677, 41 Pac. 635; Gay v. Thomas, 5 Okla. 1, 46 Pac. 578; Noffzigger v. McAllister, 12 Kan. 315; Anderson v. Ritterbusch, 22 Okla. 761, 98 Pac. 1002.

As a further ground of complaint, the plaintiff in his petition says:

"That by the provisions of said act there is sought to be and is appropriated the sum of $650,000 **out of any moneys in the state treasury of the state of Oklahoma,** not otherwise appropriated, for aid to certain weak school districts."

Plaintiff then correctly asserts that these funds are not "apportioned among and between all the several common school districts of the state in proportion to the school population of the several districts," as is provided in section 3 of art. 11 of the state Constitution in relation to the income from the permanent school fund of the state. For this reason he asserts the act is

unconstitutional. The trouble with this contention is that the moneys are not appropriated from this fund, and the constitutional provision to which we have last referred is, therefore, inapplicable. The act itself does not specifically designate the fund out of which the money is appropriated, but the plaintiff in his petition filed in the lower court, and on which he here stands, admits that the effect of the act is to appropriate this money "out of any moneys in the treasury of the state of Oklahoma, not otherwise appropriated." Upon this theory he stood in the lower court, and so he must stand here. In his original brief filed in this court, he expressly states that he waives any charge that the act is violative of section 55 of art. 5 of the state Constitution, that being the constitutional provision regulating the form of bills appropriating moneys from the treasury of the state. Nevertheless, in his reply brief he urges us to hold that the act is invalid because it does not designate the fund from which it is appropriated. Then, after raising a question of law by himself denied in his own petition and expressly waived in his original brief, he presents no argument in support thereof, and cites no authorities upholding his contention. The matter has not heretofore been expressly determined by this court, and is of so great public concern that we feel the question should nevertheless be determined here.

Said section 55 of art. 5, supra, requires an appropriation bill to meet five requirements, as follows, to wit: (a) Make an appropriation of money, (b) provide for its payment within 30 months, (c) specify the sum appropriated, (d) state the object to which said sum shall be applied, and (e) not require reference to any other law to fix the sum appropriated.

Plaintiff in error cites, without quoting from the following decisions of this court, to wit: Menefee v. Askew, 25 Okla. 623, 107 Pac. 159; Meyer v. Clift, 31 Okla. 793, 123 Pac. 1042.

Like counsel for plaintiff in error, we fail to find any expression therein upon the point under consideration, and need not analyze the rules of law therein announced.

In 36 Cyc., page 892, paragraph C, the author collects authorities on the point and says that:

"Nor need the statute designate the fund out of which the money is drawn."

In the early California case of Proll v. Dunn, 22 Pac. 143, the court gives an analysis of the questions which we approve, and which, because the question is presented in this case for the first time in this jurisdiction, we extensively quote. The court said:

"Neither the Constitution nor the Code requires that an appropriation act shall specify the fund out of which the appropriation shall be paid, nor is it usual in appropriation acts to do so. If such a specification is required, the wheels of the government ought long since to have stopped, for out of many acts which we have examined, including the general appropriation bills for the current and past years, we find none which make such designation. It has become and is the custom in this state, of very general, but not universal, application, to use the phrase 'appropriated out of any money in the treasury not otherwise appropriated', but it seems to be mere custom, not founded upon any constitutional or other legislative requirement. And we learn from the argument that the comptroller interprets that phrase to mean 'out of the general fund.' We know of no law which authorizes such an interpretation. On the contrary, it would seem that everything authorized by law to be paid out of the state treasury is payable out of the general fund, if not specially made payable out of some specific fund, as the 'school fund', the 'interest and sinking fund,' and the like. The truth is there are not many separate funds in the treasury, but there are many appropriations, and most of the latter are payable out of the same fund—the general fund."

The Constitution of Colorado required that every act making an appropriation, where the money appropriated was not actually in the treasury, should specify the revenue of the particular fiscal year out of which the appropriation was to be paid. An act was passed by the Colorado Legislature which did not specifically state the particular fiscal year out of which the appropriation was to be paid, but the same could be determined by implication, and the Supreme Court of Colorado, in Goodykoontz v. People, 38 Pac. 473, held:

"Every legislative act making an appropriation, where the money appropriated is not actually in the treasury, should specify the revenue of the particular fiscal year out of which the appropriation is to be paid; but an act which does not definitely specify such revenue is not void, provided such revenue can, from the language and purposes of the act, be ascertained with reasonable certainty."

The Constitution of Nevada is similar to that of Oklahoma with relation to the appropriation of money, and in State v. Westerfield, 49 Pac. 119, the Supreme Court of Nevada held that where an appropriation was made from the wrong fund, but was an appropriation proper for the Legislature to

make, the same was valid and should be paid from the general fund, saying:

"We hold that the Legislature has made a valid appropriation for the payment of the salary in question, and that the same is payable out of the general fund in the state treasury, the same as the salary of the Governor and most of the other state officers, **and the same as other appropriations in which no specific fund is named.** Section 19 of art. 4 of the Constitution provides: 'No money shall be drawn from the treasury but in consequence of appropriations made by law.' It will be observed that it is not required that the fund out of which the appropriations are to be made shall be named in the appropriation act. Usually, if not always, other acts or the Constitution show what fund the money appropriated is to be drawn from."

Under the well-recognized rules of statutory construction, we are required to indulge every reasonable presumption in favor of the constitutionality of the act, and where an act is capable of two constructions, one of which makes it valid and one void, we must give same the construction that renders the statute valid. We cannot hold, under these rules, that the Legislature intended to appropriate this money out of the funds of some other state or from funds not subject to lawful use for the purpose stated. The appropriations section of the act is not handsomely definite nor artistically complete, but it was clearly intended to appropriate these moneys out of the general fund of the state, and in form it is sufficient so to do.

The judgment of the lower court is affirmed.

JOHNSON, C. J., and MASON, WARREN, and GORDON, JJ., concur.

McNEILL, V. C. J., and HARRISON, J., concur in syllabus and conclusions.