A. J. KLEEN, Appellant, v. C. FRED PORTER, Comptroller of the State of Iowa, et al., Appellees.

No. 46896.

AUGUST 5, 1946.

OPINION MODIFIED AND REHEARING DENIED OCTOBER 18, 1946.

F. E. Van Alstine and Sewell Van Alstine, both of Poca-
·hontas, for appellant.

John M. Rankin, Attorney General, R. G. Yoder, First
Assistant Attorney General, Oscar Strauss, Assistant Attorney
General, Wisdom & Wisdom, of Des Moines, and A. C. Car-
michael, of Pocahontas, for appellees.

MILLER, J.—This is an action for a declaratory judgment,
seeking to have the court find and declare unconstitutional
chapter 133, Acts of the Fifty-first General Assembly (chapter
285, Code, 1946), which appropriated $2,000,000 from the
general fund, as augmented by the three-point tax fund, to
be used to reimburse the several school districts of the state
for expenses incurred by them in furnishing transportation
to and from school for pupils living more than two miles from
the school attended, and also that it find and declare uncon-
stitutional chapter 134, Acts of the Fifty-first General Assem-
bly (chapter 286, Code, 1946), which appropriated $1,000,000
from the same funds to be used for supplemental aid to school
districts whose available funds, as defined in the act, are in-
sufficient to meet a fixed educational cost of $75 per grade
pupil and $125 per high-school pupil. The petition asserted
that each statute violated sections 3 and 7 of the Second
Division of Article IX of the Constitution of Iowa in that
each appropriated money to the support and maintenance of
common schools without regard to the enumeration of youths
between the ages of five and twenty-one years, residents in
said school districts.

The defendants filed a motion to dismiss the action which
asserted that the appropriations made by the two statutes from
the three-point tax fund through payment from the general
fund of the state did not violate the provisions of sections 3

and 7, division 2, Article IX of the Constitution of Iowa, because neither the three-point tax fund nor the general fund of the state constituted a portion of the school fund contemplated by division 2 of said Article IX; nor did they constitute "other means" within the contemplation of section 3, division 2 of said Article IX; and they did not constitute "money subject to the support and maintenance of common schools", within the contemplation of section 7, division 2 of said Article IX.

The trial court determined that the constitutional provisions relied upon are not applicable to the statutes here challenged or the funds appropriated thereby and dismissed the action. Plaintiff appeals to this court.

■ Article IX of the Constitution of Iowa is divided into two divisions. The first division is entitled "Education and School Lands." Section 1 thereof, provides:

"The educational interest of the State, including Common Schools and other educational institutions, shall be under the management of a Board of Education."

Section 12 thereof provides:

"The Board of Education shall provide for the education of all the youths of the State, through a system of Common Schools and such school shall be organized and kept in each school district at least three months in each year. Any district failing, for two consecutive years, to organize and keep up a school as aforesaid may be deprived of their portion of the school fund."

Section 15 thereof provides, as follows:

"At any time after the year One thousand eight hundred and sixty three, the General Assembly shall have power to abolish or re-organize said Board of Education, and provide for the educational interest of the State in any other manner that to them shall seem best and proper."

Pursuant to said section 15, the Tenth General Assembly in 1864, by section 1 of chapter 52 of its Acts, abolished the

board of education provided for in said Article IX of the Constitution and has made other provision for the educational interests of the state. The provisions thus enacted are now codified in Title XII, Code, 1946, chapters 257 to 305, inclusive. Of course, many of these chapters deal with educational projects other than the common schools. However, a large number of them deal with the common schools. Chapters 285 and 286, which are challenged in this action, appear in said title and were obviously enacted by the legislature under the theory that such legislation was authorized by section 15, division 1, Article IX, of the Constitution, after the legislature had abolished the original board of education in 1864.

Division 2 of Article IX of the Constitution is entitled "School Funds and School Lands." Section 1 thereof provides as follows:

"The educational and school funds and lands, shall be under the control and management of the General Assembly of this State."

Section 3 of said division 2, Article IX, one of the sections relied upon by appellant herein, provides as follows:

"The General Assembly shall encourage, by all suitable means, the promotion of intellectual, scientific, moral, and agricultural improvement. The proceeds of all lands that have been, or hereafter may be, granted by the United States to this State, for the support of schools, which may have been, or shall hereafter be sold, or disposed of, and the five hundred thousand acres of land granted to the new States, under an act of Congress, distributing the proceeds of the public lands among the several States of the Union, approved in the year of our Lord one thousand eight hundred and forty one, and all estates of deceased persons who may have died without leaving a will or heir, and also such per cent. as has been or may hereafter be granted by Congress, on the sale of lands in this State, shall be, and remain a perpetual fund, the interest of which, together with all rents of the unsold lands, and such other means as the General Assembly may provide, shall

be inviolably appropriated to the support of Common schools throughout the State.''

Section 7 of said division 2 of Article IX, the other provision relied upon by appellant herein, provides as follows:

''The money subject to the support and maintenance of common schools shall be distributed to the districts in proportion to the number of youths, between the ages of five and twenty-one years, in such manner as may be provided by the General Assembly.''

It will be noted that section 3, above quoted, provides for a perpetual fund and, because it is a perpetual fund, only the interest thereof is to be used for school purposes. The language on which appellant relies, appearing in the latter part of section 3 above quoted, ''and such other means as the General Assembly may provide,'' is used in connection with interest on the perpetual fund and rents of unsold lands. It clearly indicates that the general assembly could augment the income from the permanent fund and, under section 7, above quoted, the funds which were used to augment such income would be distributed on an enumeration basis as provided by said section 7.

However, the first sentence of said section 3 provides that, ''The General Assembly shall encourage, by all suitable means, the promotion of intellectual * * * improvement.'' The support of the common schools obviously promotes intellectual improvement. This promotion can be accomplished ''by all suitable means.'' We are convinced that the ''suitable means'' adopted by the legislature to promote intellectual improvement through support of the common schools could be *in addition to* the support of common schools accomplished through augmenting the income from the perpetual fund by ''such other means as the General Assembly may provide'' pursuant to the latter part of said section 3.

The permanent school fund was originally produced primarily by liberal grants of public lands to the state to foster and encourage the maintenance of common schools of the state. This permanent fund is ''inviolably appropriated to the sup-

port of Common schools throughout the State," and under said section 7 must be distributed among the school districts on an enumeration basis. The income therefrom alone is not sufficient to support the common-school system. Appellees contend that, in construing said sections 3 and 7 together, the words "such other means as the General Assembly may provide" in section 3 mean in effect that only "other *such* means as the General Assembly may provide" must be distributed on an enumeration basis. This interpretation gives a logical and reasonable meaning to both the words "such" and "other," makes the broad and liberal provisions of the first sentence of section 3 applicable to common schools as well as other phases of our educational system, and makes possible a reasonable application of the language in section 15 of division 1 of said Article IX as applied to the common schools.

Appellant contends that in construing said provisions of sections 3 and 7 together we should hold that "*any* other means as the General Assembly may provide" for the support of the common schools must be treated as augmenting the income from the permanent school fund and must be distributed among the school districts solely on the enumeration basis prescribed by said section 7. This interpretation would change the word "such" in section 3 to "any" and change the word "as" to "which," would render the words "by all suitable means" in the first sentence of section 3 meaningless as to the common schools, and would place a severe restriction upon the words "in any other manner that to them shall seem best and proper" in section 15 of division 1 of Article IX when applied to the common schools.

Appellees' theory means that if funds appropriated by the legislature are intended to augment the income from the permanent fund so as to become a part of the permanent fund they constitute "other such means" for the support of common schools and must be distributed on an enumeration basis. The legislature has made many appropriations of this character. Those made by the Seventh to the Thirty-ninth General Assemblies inclusive exceed $600,000. Appellees concede that, "There is no question that the appropriations made into the interest fund of the permanent school fund must be distributed on an

enumeration basis'' (under section 7, division 2, Article IX, of the Constitution). But, under appellees' theory, if the appropriation for school purposes is one that is not intended to augment the income from the permanent school fund so that said appropriation does not become a part of the permanent school fund, it may be distributed as the legislature may provide under the broad authority given it by the first sentence of section 3, division 2, Article IX, to ''encourage, by all suitable means, the promotion of intellectual * * * improvement,'' and that given by section 15, division 1, Article IX, to ''provide for the educational interest of the State in any other manner that to them shall seem best and proper.'' Appropriations so made need not be distributed solely on an enumeration basis. Appropriations of this character have been made in the past and specific provision has been made for their distribution on a basis other than that of enumeration of youths between five and twenty-one years of age as stated in said section 7. Illustrative are those made pursuant to section 293.7, Code, 1946, providing state aid to standard rural schools, which were $100,000 per year from 1919 to 1933, and have been $90,000 per year since then. This interpretation of the constitutional provisions is logical, reasonable, and sound, and it is our duty to adopt it herein. Other courts, in dealing with somewhat analogous constitutional provisions, have repeatedly so held.

In 56 C. J. 191, the general rule is stated thus:

''Constitutional provisions relative to the distribution and apportionment of the income from the school fund have no application to the disposition of moneys appropriated by the state for school purposes out of other funds; and a constitutional provision that the school fund shall remain inviolate relates only to the school fund as established by the constitution and not to other funds which may be appropriated for school purposes.''

One of the cases cited in support of the foregoing statement is Marrs v. Mumme, Tex. Civ. App., 25 S. W. 2d 215, 219, wherein the court states:

''If our construction of section 3 of article 7 be correct,

then the provisions of section 5 of the same article are in no manner assailed by the Rural School Act. The money appropriated under the act was no part of the available school fund provided by the Constitution, and the constitutional provisions as to distribution of the school fund should not be consulted in testing the constitutionality of the act. Section 5 relates to the permanent school fund, and to the appropriation of that fund and the available school fund, and, as the money covered by the act now being considered is not stamped with the characteristics of either, the section has no application to it whatever, and the provisions as to distribution of the permanent or available school fund can have no reference to the appropriation of the $5,000,000.

"The Constitution makers never contemplated that any appropriation of general funds to assist certain neglected school districts would in some magic way convert the appropriation into available school funds and defeat the purposes of the legislation by rendering necessary a per capita distribution of the money to every scholastic in Texas. Some hard things have been charged to the Constitution, but we do not believe that it can be so warped and distorted as to prevent the more than 300,000 children in the rural communities from receiving aid, which all students of our public school system realize is absolutely demanded, if the system is made to serve, not a favored portion, but all the children of the state."

Other cases to similar effect include: Miller v. Childers, 107 Okla. 57, 238 P. 204; Miller v. State ex rel. Russell, 130 Miss. 564, 94 So. 706; In re Opinions of the Justices, 215 Ala. 524, 111 So. 312; State ex rel. Clark v. Gordon, 261 Mo. 631, 170 S. W. 892.

Of course, we must construe the specific language of our own constitution. Giving consideration to all the matters heretofore set forth, we hold the statutes here challenged are constitutional. The trial court was clearly right in holding that the appropriations made by the legislature, in the two statutes here challenged, from the general fund of the state, as augmented by transfers to it from the three-point tax fund, were not made from the permanent school fund and were not stamped with the characteristics of that fund and were not required to be

distributed on the enumeration basis stated in section 7, division 2, Article IX of the Constitution.

Much of the argument of appellant herein is based upon the holding of this court in the early case of District Township of Dubuque v. County Judge, 13 Iowa 250, 251, decided in 1862. That case involved an interpretation of sections 3 and 7, division 2, Article IX of the Constitution, as applied to the provisions of sections 31 and 32, chapter 52, Acts of the Seventh General Assembly, which required the county judge of each county, in levying county taxes, to levy a tax for the support of schools within the county and distribute the same among the school districts of the county. One half of the tax was to be distributed in equal sums to each school district and the other half of the tax was to be distributed on the enumeration basis stated in section 7, division 2, Article IX of the Constitution. The plaintiff contended that all of the tax was required to be distributed on an enumeration basis. The trial court held for the defendant. On appeal, this court reversed the case, stating as follows:

"We suppose that it is §§ 3 and 7 of the second division of Art. 9 of the Constitution, in relation to school funds, and school lands, upon which the plaintiff relies, as showing the invalidity of the act above referred to. The first of these sections, that is, § 3, defines what shall constitute a perpetual fund for educational purposes, and then concludes with these words: '*The interest of which* (meaning the interest arising from the permanent school fund,) *together with all rents of the unsold lands, and such other means as the General Assembly may provide, shall be inviolably appropriated to the support of common schools, throughout the state.*'

"The expression '*and such other means as the General Assembly may provide,*' must include, *ex vi termini* any other funds than those named which the Legislature should authorize to be raised for the support of schools. Under the authority of the aforesaid act of 1858, the County of Dubuque levied and collected a school tax of $4,445, for the support of schools in that county. The same act declares how this fund shall be used and distributed, namely, one-half in equal sums among all the districts of the county, the other moiety to be distributed to the dis-

tricts in proportion to the number of youths between the ages of five and twenty-one. But the seventh section of the 9th Art. of the Constitution above referred to, provides that 'the money subject to the support and maintenance of common schools, shall be distributed to the districts in proportion to the number of youths between the ages of five and twenty-one years, in such manner as may be provided by the General Assembly.'

"It is impossible for us to perceive how the act of the Legislature referred to can stand with this provision of the Constitution. They seem to be irreconcilable. The Constitution has ordained one rule, and the General Assembly has adopted and authorized a different rule, for the distribution of the same fund. The latter, of course, must yield to the former."

The foregoing pronouncement supports the theory of appellant herein and cannot be reconciled with appellees' theory. The opinion recites that the question was submitted "on the papers without argument from counsel." This court was not supplied then with elaborate briefs like those with which we have been favored on this submission. We have been unable to find any subsequent decision of this court which has cited or referred to said holding. Because of the matters set forth in this opinion, we now hold that our decision in District Township of Dubuque v. County Judge, supra, 13 Iowa 250, is unsound and is expressly overruled.

The decree is—Affirmed.

GARFIELD, C. J., and MULRONEY, SMITH, WENNERSTRUM, OLIVER, HALE, and MANTZ, JJ., concur.