School District No. 8 v. Board of Education.

No. 25,167.

SCHOOL DISTRICT No. 8, SHAWNEE TOWNSHIP, IN WYANDOTTE COUNTY, *Appellee,* v. BOARD OF EDUCATION OF THE CITY OF KANSAS CITY, *Appellant.*

SYLLABUS BY THE COURT.

TAXATION—*Where Property Belonging to a School District Is by Mistake Listed in the Adjoining City District and Taxes Collected Thereon, the School District May Recover Such Taxes from the City District.* In the years 1918 and 1919 the county assessor erroneously listed property in plaintiff's district as having its taxable situs in defendant's district. Without knowledge of the mistake, levies were made and extended, the owner of the property paid his taxes, and the taxes received by the county treasurer pursuant to the levies were disbursed to the two districts and were used for school purposes. Defendant's levies were higher than those of plaintiff. In May, 1922, plaintiff sued defendant for a sum equal to the amount it would have received if its levy had been extended against the taxable value of the property. *Held,* plaintiff may recover.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. MC-CAMISH, judge. Opinion filed April 5, 1924. Affirmed.

*J. O. Emerson,* and *David J. Smith,* both of Kansas City, for the *appellant.*
*A. J. Herrod,* of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the school district to recover taxes which the board of education received from property in the school district. Plaintiff recovered and defendant appeals.

The school district's territory adjoins that of the board of education. For purposes of this case the Armour Grain Company's property was taxable in the school district's territory. An issue of fact regarding situs of the property remains to be tried, but is not now material. In the years 1918 and 1919 the county assessor erroneously returned the property as in the board of education's territory. The result was the assessed value of property certified by the county clerk to the school district board as the basis for its levies was diminished, and the value certified to the board of education as the basis for its levies was increased, by the assessed value of the grain company's property. Levies were extended on the tax rolls accordingly. The grain company paid its taxes and the county treasurer paid the money to the board of education, which spent it

School District No. 8 v. Board of Education.

for school purposes. The board of education levies were higher each year than the school district levies, and the school district sues for the amount of taxes its levies would have produced had they been extended against the assessed value of the property. The suit was commenced on May 17, 1922, four years after the first erroneous assessment.

Plaintiff relies on the case of *School District v. School District*, 80 Kan. 641, 103 Pac. 126. In that case territory was detached from district No. 127, and was attached to district No. 45. District No. 127 made a levy of 13 mills on the dollar on the property remaining in that district after the change. District No. 45 made a levy of 25 mills on the property included in that district after the change. The county clerk made a mistake and extended the levy of district No. 127 against the detached property instead of the levy of district No. 45. The owner of the land paid his taxes and the county treasurer paid the sum received to district No. 127. District No. 45 sued district No. 127 for an amount which a 13-mill levy on the property would have produced, and recovered. On appeal to this court the judgment was affirmed. The case is distinguishable from the one under decision in that district No. 45 duly levied taxes on the property, no part of which it received. District No. 127 made no levy whatsoever on the property. Its levy was properly made on the property remaining in its territory after the change; but besides receiving all the taxes it levied on all the property in its district, it found itself in possession of a surplus fund equal to 13/25ths of the amount district No. 45 was short. The court treated the county clerk's error as consisting in extending on the tax rolls only 13 mills of district No. 45's levy instead of 25, the proceeds of which district No. 127 received for district No. 45's use. In this instance both plaintiff and defendant followed the statute which required them to certify to the county clerk the percentages levied, not on the property actually situated in their respective taxing districts, but "on the real and personal property in such corporation, as returned on the assessment roll of the county." (R. S. 79-1801.) Each one received the amount of taxes it expected to receive, plaintiff was not short in its revenues, and defendant had no surplus in its possession which it had no intention of producing by its levy.

Defendant relies on the case of *Wilson v. Allen County*, 99 Kan. 586, 162 Pac. 1158. That case is also distinguishable.

Wilson's land was detached from district No. 10, which was under the jurisdiction of the board of education of the City of Iola, and was attached to district No. 9. The land was taxed in district No. 10, and at a higher rate than the levy in district No. 9. Wilson paid the taxes and afterwards sued the county to recover them. The district court ordered the two districts to be made parties and the board of education answered denying any liability in the premises. District No. 9 did not appear. The district court rendered judgment as follows: *First,* in favor of the plaintiff and against the county for the excess taxes produced by applying the higher rate of No. 10; *second,* in favor of district No. 9, and against the county for the remainder of the taxes collected by district No. 10; *third,* in favor of the county and against the board of education for the full amount of the taxes. The board of education appealed to this court. It was held that Wilson paid the taxes voluntarily and could not recover. The district court had treated the county as a collection agency and so had carried liability back to the board of education. The county had made no claim to any part of the money, district No. 9 had made no claim to any part of the money, nobody appeared in this court but the board of education, and this court treated the action as one by the taxpayer against the board of education as ultimate defendant. Since the sole claimant of the fund could not recover, the judgment based on the erroneous theory he could do so, was reversed. As the syllabus and opinion show, nothing was decided except that the taxpayer was without remedy. If district No. 9 had claimed the fund up to the amount its levy would have produced, and the decision had been that, ignoring the taxpayer, district No. 9 could or could not recover, the decision would govern the present case.

There are no other decisions of this court closely in point. Defendant cites the following decisions from other states, based upon facts similar to those here involved, which tend to sustain its contention: *District Township of Rapids v. District Township of Clinton,* 27 Iowa 323; *Walser v. Board of Education,* 160 Ill. 272; *School Directors v. School Direct.,* 232 Ill. 322; *School Directors v. School Trustees,* 61 Ill. App. 89; *Board of Education v. Board of Education,* 44 Ohio St. 278; *Arthur et al. v. School District,* 164 Pa. St. 410. The conclusions reached in these cases may be summarized and applied as follows:

The taxes were not produced by any levy made by plaintiff,

whose real grievance is, not that it suffered in the exercise of its public functions, but that the property on the assessment roll of its district merely paid more taxes than would have been charged against it if the assessment roll had included the grain company's property. Those increased taxes were voluntarily paid by the property owners, just as the grain company voluntarily paid its taxes, and plaintiff has no better right to recover than taxpayers who, to discharge a burden wrongfully imposed, voluntarily parted with their money. Plaintiff stood by and allowed defendant to collect taxes on property in plaintiff's district just as its taxpayers did, and just as the grain company did, and that cannot be done indirectly which cannot be done directly. There is no privity between the two districts. All tax matters are statutory. If through some mistake for which a taxing body is not responsible, it derives an advantage, the remedy lies with the legislature. Whatever remedy has been provided should be invoked, and if no remedy has been provided, the courts are incompetent to invade the field of taxation and correct the mistake.

Defendant further contends the error made by the county assessor was one which might have been corrected by the county clerk on application of plaintiff under R. S. 79-1701, which reads as follows:

"The county clerk at any time previous to November 1 may correct any clerical errors in the assessment and tax rolls for the current year . . . and errors whereby the assessment of either real or personal property has been assigned to a district in which the property did not have its taxable situs, in which case the correction shall be made by transferring the assessment of the property from the wrong district to the proper district. After the rolls have been delivered to the county treasurer on the 1st of November no errors of the kind herein mentioned shall be corrected except upon the order of the board of county commissioners whose authority to order such corrections shall expire on the first day of February of the year following the year in which the property was assessed. If all grievances are not remedied as hereinbefore provided, previous to February 1, the tax commission is empowered at any time before June 20 of the year following the assessment year, pursuant to an application duly filed, to authorize the correction of all such errors, if it shall be made to appear that the taxpayer has been unjustly and unlawfully charged with taxes. The authority given in this section to correct errors shall carry with it the authority to issue or direct the issuance of orders to refund taxes which shall have been shown to have been unlawfully charged and collected, and authority to cancel all such unpaid erroneous taxes. Valuations placed on property by the assessor or by the county board of equalization shall not be considered under this section as erroneous assessments."

Plaintiff answers by saying the statute quoted was enacted for the benefit of the taxpayer. Defendant replies by citing the case of *Board of Education v. Barrett,* 101 Kan. 568, 167 Pac. 1068. In that case an extension of boundary brought land within the limits of a city. The county clerk was notified, but neglected to assign the land to the new taxing district. This court required him to do so in an action of mandamus brought by the board of education of the city, treating his omission as an error correctable under the statute, which was quoted in the opinion.

For the purpose of maintaining schools the territory of a state is divided into school districts, or their equivalent, and the schools of each district are supported by taxes on the property of that district. In order to enable them to discharge their functions, school districts are constituted *quasi* municipal corporations, with boards of officers for governing bodies. Each district as a public functionary has a right to receive taxes from the taxable property in its territory. In this respect districts stand toward each other very much as private proprietors, each of whom is entitled to the revenues from his own domain. If a common overseer make a mistake and place in the treasury of one, revenue produced by the property of the other, the estate of the one is benefited at the expense of the other, and the misplaced money is money had and received by one for use and benefit of the other. This being true, a common law action lies for money had and received, whatever provision the legislature has made to correct mistakes of ministerial officers having to do with assessment and collection of taxes. Such an action would ordinarily be governed by the code provision relating to limitation of actions, but because the school district is an agency of sovereignty, those provisions do not apply to it.

Therefore, the judgment of the district court is affirmed.

BURCH, J. (dissenting): In the school district case in 80 Kansas, plaintiff made a levy according to its needs, taking into consideration the attached property. It received no taxes from that property and was short in funds to that extent. Defendant did not take into consideration the property detached from it and made no levy on that property. It did, however, through mistake of the county clerk, receive taxes on that property to the full amount which application of its rate produced. Plaintiff suffered a real injury. Its revenues were actually depleted, while defendant had a surplus, and it was

just and equitable that defendant should make plaintiff whole. We have no such case here.

In this instance, plaintiff and defendant are not private corporations. While they hold title to school sites and schoolhouses, etc., they do not enjoy the general property rights of natural persons. They are merely legislative agents to receive and disburse what the legislature provides for them through administration of a taxation scheme by another set of legislative agents. While schools are supported under our system by taxes laid on property within the district, the *quasi* corporation has no legal right to taxes from such property, as a landowner is entitled to rent of his own land. Taxes are not a part of a school district's estate as rents are part of a landowner's estate, and we are not warranted in carrying over into the field of school taxes the legal implications from the private property relation.

What happened was this: Plaintiff and defendant in perfect innocence and good faith acted upon the county clerk's certificate of amount of taxable property in its district, made levies according to its need, and received and expended the money. The treasuries of the two taxing bodies were not affected. Defendant received no money beyond its necessities. It neither levied nor was paid any taxes for use of plaintiff, and it had and received no sum in taxes, which it ought not to have received. Defendant had no estate which was augmented by what it received. Plaintiff had no estate which was diminished by what defendant received. The mistake produced some slight inequality between taxpayers of the two districts. Those in plaintiff's territory paid a little more, and those in defendant's territory paid a little less, than they would have done if the grain company's property had been correctly listed. But as between the two districts, each one conducted its affairs with perfect regularity and plaintiff had no legal or equitable claim on defendant's school money for either 1918 or 1919.

Giving property a wrong situs on the assessment roll occurs so frequently, the legislature was obliged to provide a remedy. The mistake being administrative, the remedy provided is administrative. As a practical matter, all tax schemes must be closed against error and irregularity at some time, even though some inequality result. After administrative correction, adequate to meet every public and private need, is barred, the courts ought not to interfere.

Should plaintiff recover, it will not be to make up any deficiency

in its school money for 1918 or 1919. The effect of the judgment will simply be to place to plaintiff's credit a sum of money which will enable it to reduce its tax levy for 1924, on property then in its territory. The sum must be raised by a special levy for 1924, on property then in defendant's territory. The property in neither district will be the same as six years ago. Taxpayers will suffer who were not benefited by the assessor's mistake, and taxpayers will be benefited who did not suffer. The whole matter is stale, and the court's decision will create precisely the kind of disturbance which, as a matter of public policy, the legislature undertook to prevent, and will be an invitation to barratry.

DAWSON, J., joins in this dissent.