**PLEASANT VIEW REORGANIZED SCHOOL DISTRICT NO. 1 OF GREENE COUNTY, Missouri, Appellant,**

v.

**SPRINGFIELD REORGANIZED SCHOOL DISTRICT NO. 12 OF GREENE COUNTY, Missouri, Respondent.**

No. 47987.

Supreme Court of Missouri,

Division No. 1.

Jan. 9, 1961.

A. Ronald Stewart, Meredith B. Turner, Stewart, Reid and Turner, Springfield, for appellant.

Frank C. Mann, Buell F. Weathers, Mann, Walter, Powell, Burkart & Weathers, Springfield, for respondent.

HOLLINGSWORTH, Judge.

Plaintiff has appealed from a final judgment of the Circuit Court of Greene County dismissing its petition in this cause for failure to state facts upon which relief could be granted. We, therefore, look to the facts pleaded in the petition for determination of the questions here presented and, in so doing, we shall continue to refer to the parties as plaintiff and defendant.

Both plaintiff and defendant are lawfully reorganized school districts in Greene County. Plaintiff, *Pleasant View Reorganized School District No. 1,* is composed of six former common school districts, *including Fair View School District,* which became a component part of plaintiff reorgan-

ized district on January 16, 1951. Defendant, *Springfield Reorganized School District No. 12,* also organized in 1951, is composed of former Springfield School District No. 73 *and Ritter School District.*

For an unstated number of years prior to January 16, 1951, the main plant of the Springfield City Water Company was located within the boundaries of Fair View District on certain real estate referred to in plaintiff's petition and herein as Tracts One and Two. After January 16, 1951, these two tracts, by virtue of the merger of Fair View into Pleasant View, have been located in plaintiff district. Prior to 1921, the school taxes received from these two tracts were paid to Fair View. Thereafter, the school taxes levied upon and collected from these tracts have been distributed as follows:

(1) From 1921 to 1932, inclusive, the school taxes received from both of the aforesaid tracts, in the total sum of $3,544.50, were paid over to and received by Ritter District, rather than being paid to Fair View;

(2) From 1933 to 1950, inclusive, the school taxes received from Tract One, in the total sum of $47,158.09, were paid over to and received by Ritter District; and

(3) School taxes received from Tract One for the year 1951, in the sum of $18,763.38, were paid over to and received by defendant district rather than to Pleasant View District.

Recovery of the aforesaid school taxes, amounting to $69,466.43, is sought in Counts I and II of the petition, both of which allege: that said taxes were erroneously, illegally, unlawfully and wrongfully paid to, acquired by and used and expended by Ritter and defendant; that neither defendant nor Ritter was entitled to receive, acquire or expend them; and that defendant is, therefore, indebted and legally liable to plaintiff for said taxes so received, used and expended. Count I pleads plaintiff's claim of right of recovery of said taxes as an action for money had and received. Count II pleads its claim upon the equitable grounds of constructive trust. Counts III and IV involve school taxes for the year 1952, in the sum of $1,674.80, derived from a real property tax levied against a storage tank and tower owned by Springfield City Water Company and located within defendant district, but which constitutes an appurtenance of its main plant and which is, therefore, allegedly taxable in plaintiff district. These counts are also pleaded upon the two alternative theories above stated.

The petition also alleges that knowledge of the alleged wrongful payment of the aforesaid tax moneys first came to plaintiff and defendant (and their respective component districts, to wit: Fair View and Ritter) on or about December 14, 1953; and it stands unquestioned that said moneys so received by Ritter prior to 1951 and by defendant in 1951 and 1952 were used for their respective school purposes.

It should be here noted that the petition does not allege that the taxes in dispute were levied and collected for the use of either plaintiff or its component district, Fair View; neither does it allege that either plaintiff or its said component district received less or that either Ritter or defendant received more than the amounts estimated and levied as necessary for school purposes within their districts for each of the years for which recovery is sought. In fact, it is tacitly conceded that the taxes herein sought to be recovered by plaintiff were in no instance levied, collected or intended for the use of plaintiff or its component district, Fair View. To the contrary, it appears that, for some reason not shown, they were levied, collected, intended for and used exclusively by Ritter and defendant for school purposes.

The contentions of the parties, as briefed and argued in this court, are succinctly stated in their briefs. Plaintiff says: "School taxes raised by local taxation of land in one school district erroneously paid

over to and received by another school district may be recovered by the former school district by a direct action against the latter school district wrongfully receiving said taxes, unless the former school district has received school benefits from expenditure of such school funds." Defendant says: "School taxes received by a school district from land not legally within its boundaries but levied and collected for its uses and purposes and spent by it for such purposes are not recoverable by another school district within whose boundaries the land actually lies where the levy producing the taxes was not made and the taxes were not collected for the uses and purposes of such district and both districts involved obtained the amount of money estimated and levied by them as necessary for their school purposes for each year."

The parties have cited numerous cases, mostly from other states, in support of their respective contentions. An extended discussion of many of the cases cited may be found in an annotation appearing in 105 A.L.R., beginning at page 1273, and, more pertinent to the precise question here presented, at pages 1276 through 1283. See also the interpretation placed upon some of them in 79 C.J.S. Schools and School Districts §§ 407, 413(c), pages 269 and 285. A direct conflict of authority exists; oftentimes, however, differing factual situations make many of the apparent conflicts more seeming than real. We think a discussion of one Missouri case and two from other jurisdictions will serve to point up the conflict with which we are here confronted.

Both parties cite State ex rel. School District v. Beale, 1901, 90 Mo.App. 341; plaintiff insisting it is not to be construed as an authoritative decision contrary to the contention made by it in this case; defendant insisting it is exactly in point and, if followed, precludes plaintiff from maintaining this action. The opinion refers to the action as a mandamus proceeding brought in the circuit court by School District No. 1 as re-

lator to compel the respondent county clerk to extend a tax levy made by relator upon certain lands claiming that they were lands belonging to and within the boundaries of relator district. The opinion goes on to state, however, that the contest is really between relator district No. 1 and district No. 2, and that the question between them is: In which district did the lands in controversy lie? Concededly, the lands had been taxed in relator district No. 1 from 1870 to 1876 and in district No. 2 from 1880 to 1886. The court found there was abundant evidence to support the finding of the trial court that the lands lay in relator district No. 1 and affirmed its decision that the "taxes levied by such district shall *hereafter* be extended over such territory for the benefit of" relator, but reversed that portion of the judgment requiring the respondent clerk to *extend the existing levy* of relator district over the lands in dispute, saying, loc. cit. 343–344:

"The relator's alternative writ asks that the respondent clerk be required to extend the levy of the relator district over this disputed territory. And that if he has already delivered the tax-books to the collector, that he certify to such collector that the taxes collected were due to and should be paid to district No. 1. *Now it appeared in evidence that the respondent clerk had already extended the tax levied or estimated by district No. 2, over this territory. So, therefore, when the order was made in the peremptory writ to have the tax collected paid to district No. 1, it gives to the latter district taxes which it never levied. It gives it the taxes levied or estimated by another district. This, of course, should not be done. The only taxes which could legally be paid to district No. 1, would be such as that district has estimated or levied. * * * But certain it is, that error was committed in commanding the payment of taxes to district No. 1 which had been levied by district No. 2."* (Emphasis supplied.)

The judgment also directed that the "costs of this appeal * * * be assessed against" relator and *"the costs of the trial court against district No. 2."* (Emphasis supplied.)

It is plaintiff's contention that the case "involved nothing more than a mandamus proceeding to compel the county clerk to extend the levy of relator district over the disputed territory and, if the tax books had been delivered to the collector, to certify to the collector that the taxes collected were due to and should be paid to relator district. It was not a suit by a school district to recover from another school district taxes erroneously paid to the latter. [The decision] is authority only for the proposition that mandamus will not lie to 'command' (loc. cit. 344) or compel the county clerk to certify to the collector for payment to the relator district the taxes levied by the other school district. It does not rule out the type of action brought by appellant here." Defendant insists that although it does not affirmatively appear from the opinion that district No. 2 was a party, yet the fact that the "costs of the trial court" were taxed against it indicates that it was a party or that, at least, the Court of Appeals considered or treated it as the real party in interest. We think that question not too material. We are primarily concerned with the theory upon which the court reached its decision and whether, in our opinion, that theory was sound or unsound. The opinion is of value in that the court considered the right of district No. 1 to recover taxes on property legally taxable in its own district, which in fact had not been levied by it but rather had been levied by and for district No. 2, and held, we think quite logically, that district No. 1 could not collect them.

Plaintiff also contends that the decisions in Consolidated School District No. 2 of Pike County v. Cooper, Mo.App., 28 S.W.2d 384, affirmed in State ex rel. Consolidated School District No. 2 of Pike County v. Haid, et al., 328 Mo. 739, 41 S.W.2d 806, "constitute at least indirect authority in

support of" plaintiff's position, as more fully exemplified in certain cases from other jurisdictions upon which plaintiff places strong reliance. Before consideration of the latter cases, we are impelled to observe that the fact situations presented in the two above cited Missouri cases and the law therein considered are so far removed from the facts and issues of law here presented as to shed little, if any, light upon the problem with which we are here confronted.

One of the cases upon which plaintiff places its principal reliance is School Dist. No. 8, Shawnee Tp., Wyandotte County v. Board of Education of Kansas City, 1924, 115 Kan. 806, 224 P. 892. It must be conceded that the opinion adopted by a majority of the members of that court clearly expounds the theory upon which plaintiff primarily predicates its right to recover. We shall, therefore, after stating the facts, quote from it at length. Plaintiff and defendant were adjoining school districts. In the years 1918 and 1919 the county assessor erroneously listed property in plaintiff district as having its taxable situs in defendant district. Without knowledge of the mistake, levies were made and extended; and the owner of the property, Armour Grain Company, paid its taxes. The taxes received by the county treasurer pursuant to the levies were disbursed to the two districts and were used for school purposes. Defendant's levies were higher than those of plaintiff. In 1922, plaintiff sued defendant for a sum equal to the amount it would have received if its levy had been extended against the taxable value of the property. The trial court rendered judgment in favor of plaintiff, from which defendant appealed. As stated, the judgment was affirmed by a divided court. The opinion is interesting in that although the majority opinion sedulously noted the holdings in the cases upon which the defendant in that case, as does the defendant in the instant case, relied, it nevertheless thereafter ignored them in their entirety and rendered its decision without any citation of authority to support it. It also noted defendant's contention that

the legislature had provided a method for correcting the mistakes of the county assessor. The majority held, 224 P. loc. cit. 894:

> "For the purpose of maintaining schools the territory of a state is divided into school districts, or their equivalent, and the schools of each district are supported by taxes on the property of that district. In order to enable them to discharge their functions, school districts are constituted quasi municipal corporations, with boards of officers for governing bodies. Each district as a public functionary has a right to receive taxes from the taxable property in its territory. In this respect districts stand toward each other very much as private proprietors, each of whom is entitled to the revenues from his own domain. If a common overseer make a mistake and place in the treasury of one revenue produced by the property of the other, the estate of the one is benefited at the expense of the other, and the misplaced money is money had and received by one for use and benefit of the other. This being true, a common-law action lies for money had and received, whatever provision the Legislature has made to correct mistakes of ministerial officers having to do with assessment and collection of taxes."

Two of the judges dissented, stating, 224 P. loc. cit. 894:

> "In this instance, plaintiff and defendant are not private corporations. While they hold title to school sites and schoolhouses, etc., they do not enjoy the general property rights of natural persons. They are merely legislative agents to receive and disburse what the Legislature provides for them through administration of a taxation scheme by another set of legislative agents. While schools are supported under our system by taxes laid on property within the district, the quasi corporation has no legal right to taxes from such property, as a landowner is entitled to rent of his own land. Taxes are not a part of a school district's estate as rents are part of a landowner's estate, and we are not warranted in carrying over into the field of school taxes the legal implications from the private property relation.

> "What happened was this: Plaintiff and defendant in perfect innocence and good faith acted upon the county clerk's certificate of amount of taxable property in its district, made levies according to its need, and received and expended the money. The treasuries of the two taxing bodies were not affected. Defendant received no money beyond its necessities. It neither levied nor was paid any taxes for use of plaintiff, and it had and received no sum in taxes, which it ought not to have received. Defendant had no estate which was augmented by what it received. Plaintiff had no estate which was diminished by what defendant received. The mistake produced some slight inequality between taxpayers of the two districts. Those in plaintiff's territory paid a little more and those in defendant's territory paid a little less than they would have done if the grain company's property had been correctly listed. But as between the two districts each one conducted its affairs with perfect regularity, and plaintiff had no legal or equitable claim on defendant's school money for either 1918 or 1919.

> \* \* \* \* \* \*

> "Should plaintiff recover, it will not be to make up any deficiency in its school money for 1918 or 1919. The effect of the judgment will simply be to place to plaintiff's credit a sum of money which will enable it to reduce its tax levy for 1924, on property then in its territory. The sum must be raised by a special levy for 1924, on property then in defendant's territory. The

property in neither district will be the same as six years ago. Taxpayers will suffer who were not benefited by the assessor's mistake, and taxpayers will be benefited who did not suffer. The whole matter is stale, and the court's decision will create precisely the kind of disturbance which, as a matter of public policy, the Legislature undertook to prevent, * * *."

Other cases cited by plaintiff as supporting its position are: Independent School District of Town of Kelly v. School Township of Washington, 1913, 162 Iowa 42, 143 N.W. 837; School District No. 6 v. School District No. 5, 1931, 255 Mich. 428, 238 N.W. 214; Board of Education of Southgate Independent School Dist. v. Board of Education of Campbell County School Dist., Ky.1956, 293 S.W.2d 568; Jefferson School Tp. v. School Town of Worthington, 1892, 5 Ind.App. 586, 32 N.E. 807; Independent School Districts No. 1, etc., v. Common School Districts No. 1, 1936, 56 Idaho 426, 55 P.2d 144, 105 A.L.R. 1267.

We turn now to the theory upon which defendant rests its contention that the trial court correctly adjudged the insufficiency of plaintiff's petition.

Section 165.077 RSMo 1949, V.A.M.S., provides:

"The board of directors of each school district shall, on or before the fifteenth day of May of each year, forward to the county superintendent of schools an estimate of the amount of money to be raised by taxation *for the ensuing school year, and the rate required to produce said amount, specifying by funds the amount and rate necessary to sustain the school or schools of the district for the time required by law or authorized by the qualified voters of the district,* to meet principal and interest payments on the bonded debt of the district, and to provide such funds as may have been ordered by the qualified voters of the

district *for other legitimate district purposes, * * *."* (Emphasis supplied.)

Section 165.083 provides:

"Upon receipt of the estimates of the various districts, the county clerk shall proceed to assess the amount so returned on all taxable property, real and personal, in each district, as shown by the last annual assessment for state and county purposes, * * *. All taxes shall be extended by the county clerk upon the general tax books of the county for the year in separate columns arranged for that purpose; * * *."

Predicating its conclusions upon these statutes, defendant insists:

(1) That plaintiff, not being authorized to collect more than it needed for any one year and not alleging that it received less than the amount estimated for each year, has no basis upon which to claim that it or its component Fair View sustained financial loss by reason of the property in question being taxed as if located in defendant district.

(2) That just as neither plaintiff nor its component Fair View was injured, neither was defendant nor its component Ritter benefited. Both parties and their respective component districts, Fair View and Ritter, received precisely what they estimated as needed for each year, neither more nor less.

(3) That the only ones adversely affected by the mistake as to the location of the property in question were those taxpayers of plaintiff district in 1951 and 1952 and those of its component Fair View during the prior years who paid a higher tax rate to raise the amount levied for each year than they would have had to pay if the property had been taxed within the correct district.

(4) That because of the normal changes in taxpayers over the many years involved

and the change in the districts themselves any recovery herein by plaintiff, even if permitted, would not benefit the taxpayers who had been adversely affected.

(5) That, even if plaintiff were permitted to recover, the burden of paying the taxes necessary to satisfy the judgment would, in most part, fall not upon the taxpayers who had previously benefited by reason of having paid less taxes than they would have paid for each of the years during which the property was assessed in the defendant and its component district, Ritter; contrary to the rules and principles of equity.

The rationale of the argument above advanced by defendant clearly comes within the meaning of the decision reached by the Kansas City Court of Appeals in State ex rel. School District v. Beale, supra, 1901, 90 Mo.App. 341. It is also supported and more completely exemplified in the case of Fall River Joint Union High School Dist. v. Shasta Union High School Dist., 1930, 104 Cal.App. 444, 285 P. 1091. In that case, Fall River School District sued to recover $8,293.84 for taxes received by Shasta Union District during the years of 1925 to 1928, inclusive. The trial court overruled defendant's demurrer to the petition predicated on grounds, it did not state a cause of action. Defendant refused to plead further, whereupon judgment was entered for plaintiff for the amount sought in the petition. Defendant appealed. The District Court of Appeals reversed with directions to the trial court to sustain defendant's demurrer, without leave to amend. The opinion states the question for decision as follows, 285 p. loc. cit. 1092:

"The respondent, in support of the judgment in its favor, makes the following contention: 'That there is but one question involved in this appeal, and that is whether an action for money had and received will lie to recover from a High School District moneys which it has received from taxes for High School purposes, assessed and collected upon lands wholly outside of its boundaries, and wholly within the boundaries of plaintiff district.' This, however, is not a full or complete statement of the issues involved. The question really at issue is whether money received by one district, from lands apparently but not legally within its exterior boundaries, levied and collected for its uses and purposes and devoted to its uses and purposes, can be recovered by a district within whose territory the lands actually lie, where no levy has been made or taxes collected for its uses and purposes, and where both districts involved obtained exactly the amount of moneys for which their budget called, and neither district obtained or had the use of money intended for the other."

The opinion then noted that the statutes of California required that the school board of every high school should file annually with the board of supervisors an estimate of the amount required for maintaining the high school for the ensuing year and that the board of supervisors levy a tax upon the property in the district to raise the amount of the estimate, and continues, 285 P. loc. cit. 1092:

"Before beginning a review of the authorities relied upon by the respondent, we may state that the complaint fails to show that the plaintiff suffered any deficit in its school funds, or that the defendant obtained any surplus in its school funds by reason of the levy and collection of taxes upon the properties mentioned in the complaint. The contention in this case appears to be based upon the theory that each high school district has an inherent right to all moneys collected by way of taxation upon lands lying within the exterior boundaries of its district, whether or not the levy and collection of such moneys was intended for, or had for its uses and purposes, and whether it did or did not receive all the money set forth as necessary in its estimate, and

irrespective of whether there was or was not a deficit in its funds, and whether there was or was not a surplus in the funds of the district for which the tax was levied and collected.

"This is not a case where taxes were levied and collected for one district, and, by mistake, turned over or paid to another district. So far as the complaint is concerned, each district in this action had and enjoyed all the money necessary for its uses and purposes, and no money was paid by mistake to the appellant, derived from taxes levied and collected for the uses and purposes of the plaintiff, as no such taxes were levied or collected."

The opinion also noted with approval the decision of this court in State ex rel. School District v. Beale, supra, 90 Mo.App. 341, and states further, 285 P. loc. cit. 1095:

"If it be a fact, as contended by the respondent, that the taxpayers in the respondent district paid somewhat in excess of the moneys they should have paid, if the true situs of the territory involved had been known and assessed accordingly, the effective answer thereto is that, so far as the record before us shows, all of the taxes were voluntarily paid, and the parties paying the taxes are not before us."

The court also reviewed and analyzed the cases cited by the plaintiff, including School District No. 8, Shawnee Tp., Wyandotte County v. Board of Education of Kansas City, supra, 115 Kan. 806, 224 P. 892, from which we have hereinabove set forth extended quotations, and noted with reference to the latter that the reasoning upon which the majority opinion was founded is "very clearly answered by the dissenting opinion."

Other cases cited by defendant in the instant case as supporting its position are: Eichman v. Anderson, 1959, 23 Ill.App.2d 329, 162 N.E.2d 673; Lepanto Special School Dist. v. Marked Tree Special School Dist., 1927, 173 Ark. 82, 291 S.W. 1006; Walser v. Board of Education, 1895, 160 Ill. 272, 43 N.E. 346, 31 L.R.A. 329; Board of Education of Lyme Township v. Board of Education, 1886, 44 Ohio St. 278, 7 N.E. 12; School Directors of District No. 153 v. School Directors of District No. 154, 1908, 232 Ill. 322, 83 N.E. 849.

We need not prolong this already overly extended opinion. We are convinced that the reasoning set forth in the Beale and Fall River cases, supra, is basically sound and should be accepted as dispositive of this case.

The judgment of the trial court is affirmed.

All concur.