Winchester, J.
 

 *694
 
 ¶ 1 The issue in the case before us involves the resolution of the distribution of ad valorem taxes from the 2006-2010 tax years that should have be apportioned to the Stroud Public Schools
 
 [1]
 
 (Stroud), but were improperly distributed to the Cushing and Wellston Public Schools (Cushing and Wellston).
 
 [2]
 
 Those taxes were levied on property located within the Stroud district, but erroneously reported within the Cushing and Wellston districts. The Oklahoma Tax Commission discovered the error and notified the parties. Stroud seeks a judgment requiring Cushing and Wellston to pay those improperly disbursed tax revenues to Stroud. All three school districts moved for summary judgment and all appeal the district court's judgment.
 

 FACTS AND PROCEDURE
 

 ¶ 2 Within the 2006 through 2010 tax years, the Oklahoma Tax Commission and the Oklahoma State Board of Equalization issued certified assessments of certain public property physically located within the boundaries of the Stroud school district. Ad valorem taxes associated with these properties were distributed by the Lincoln County Treasurer to the Cushing and Wellston districts, instead of to Stroud. The error was discovered and subsequently corrected by the Lincoln County Board of Tax Roll Corrections during the 2010-2011 fiscal year. There is no disagreement among the three school districts that they are not responsible for the errors made in the distribution of the ad valorem taxes. The Stroud superintendent, Joe Van Tuyl, testified in his deposition concerning the defendant school districts, "[T]his is no fault of theirs that those assessments and allocations were wrong."
 
 [3]
 
 To recover the funds that should have been Stroud's, Stroud sued Cushing and Wellston school districts. Stroud filed its petition on April 22, 2013. The defendant school districts filed a motion for summary judgment in December of 2014. In the same month, the plaintiff responded with its own motion for summary judgment.
 

 ¶ 3 After the original judge in the case recused, the Chief Justice of the Supreme Court of Oklahoma on April 14, 2015, assigned Judge Butner to hear the case. After reviewing the case, including supplement briefs, and hearing motions by the parties, Judge Butner issued an eleven-page Journal Entry of Judgment, filed on October 31, 2016. Within that judgment the court reviewed Stroud's claims. The court reviewed the actual distribution of the taxes, and the State Aid
 
 [4]
 
 received by each of the school districts. The Court found that due to the additional State Aid, Stroud actually received 26 cents more than it otherwise would have if it had received the taxes from the erroneously apportioned taxable property. The Court concluded that Stroud did not suffer any monetary loss to its general fund as the result of the erroneous apportionment, and that no amount of restitution was due Stroud applicable to its general fund.
 

 *695
 
 ¶ 4 In addition, the court adopted the previous judge's March 23, 2015, order. It granted summary judgment in favor of Cushing on the claim by Stroud against Cushing's sinking fund; granted summary judgment in favor of Stroud against Cushing and Wellston for the subject ad valorem taxes paid into their building fund and general funds for the 2010-2011 fiscal year, but subject to an appropriate setoff relating to State Aid. Accordingly, Judge Butner granted judgment against Cushing in the amount of $59,442.74, and against Wellston in the amount of $20,109.12. His Journal Entry of Judgment found that the defendants did not dispute that their building funds received these amounts.
 

 ¶ 5 All three school districts appealed. Cushing and Wellston assert in their Petition in Error that the trial court should have adopted the reasoning found in
 
 Fall River Jt. Union High Sch. Dist. v. Shasta Union High Sch. Dist.,
 

 104 Cal. App. 444
 
 ,
 
 285 P. 1091
 
 (1930). Stroud answers that
 
 Fall River
 
 has not been adopted in Oklahoma, and is contrary to the current law in this state.
 

 ¶ 6 Stroud raises other issues with an order originally entered by Judge Ashwood on January 15, 2015. Stroud alleges the judge engaged in
 
 ex parte
 
 communications after that judgment and subsequently entered orders affecting the substantive rights of the parties. Judge Ashwood then recused from the case without explanation. Judge Butner was assigned as judge and conducted a hearing with counsel. He pronounced a judgment that adopted Judge Ashwood's Court Minute of January 20, 2015, the Court Minute of February 20, 2015, and the Order of March 23, 2015. Those Court Minutes and the Order were less favorable to Stroud than Judge Ashwood's original judgment. However, given this Court's determination of the law that should govern this case, none of these issues are relevant to our resolution of this cause.
 

 ¶ 7 There are no fact questions to be decided. Only legal questions are before this Court.
 

 DISCUSSION
 

 ¶ 8 Stroud describes the holding in
 
 Fall River
 
 as providing that after a political entity receives tax revenue due another, it is not required to pay restitution when both entities received and expended the amount for which they budgeted. This description does not adequately describe the holding.
 

 ¶ 9
 
 Fall River
 
 states the issue before that court:
 

 "The question really at issue is whether money received by one district, from lands apparently but not legally within its exterior boundaries, levied and collected for its uses and purposes and devoted to its uses and purposes, can be recovered by a district within whose territory the lands actually lie, where no levy has been made or taxes collected for its uses and purposes, and where both districts involved obtained exactly the amount of moneys for which their budget called, and neither district obtained or had the use of money intended for the other."
 

 Fall River
 
 ,
 
 104 Cal.App. at 446
 
 ,
 
 285 P. at 1092
 
 . The facts in that case reveal that the board of supervisors of the county of Shasta made an order to transfer to one school district real property from another school district. However, the transfer did not comply with the law and a judgment subsequently declared that transfer null and void.
 
 Fall River
 
 ,
 
 104 Cal.App. at 445
 
 ,
 
 285 P. at 1091
 
 . Ad valorem taxes had been collected and paid to the new school district. After the judgment invalidated the illegal transfer, the original school district sued to recover the ad valorem taxes it would have received. The plaintiff received a judgment in its favor for the amount of $8,293.84 together with interest from the date of the entry of judgment. The District Court of Appeal reversed with directions to sustain the defendant's demurrer to the plaintiff's complaint, without leave to amend.
 

 ¶ 10 The
 
 Fall River
 
 court observed that the complaint contained no allegation that the plaintiff failed to receive all the money necessary to maintain its school district. No allegation claimed the defendant school district received more money than was necessary to support its school district.
 
 Fall River
 
 ,
 
 104 Cal.App. at 445-446
 
 ,
 
 285 P. at 1091
 
 . The court reiterated that the complaint failed to
 
 *696
 
 show that the plaintiff suffered any deficit in its school funds, nor did the defendant obtain any surplus by reason of the levy and collection of taxes upon the properties.
 
 Fall River
 
 ,
 
 104 Cal.App. at 447
 
 ,
 
 285 P. at 1092
 
 . Since each district received the funds according to the estimate submitted, and the contested funds had been used for educational purposes, "the finances of the district ought not be disturbed by any judgment ordering a refund, and that to do so would be inequitable, as all parties herein acted in good faith."
 
 Fall River
 
 ,
 
 104 Cal.App. at 455
 
 ,
 
 285 P. at 1095
 
 .
 

 ¶ 11 The reasoning found in the
 
 Fall River
 
 case is recognized by the Missouri Supreme Court in
 
 Pleasant View Reorganized School District No. 1 of Greene County, Missouri v. Springfield Reorganized School District No. 12 of Greene County, Missouri,
 

 341 S.W.2d 853
 
 (Mo. 1961). In that case, school taxes raised by local taxation of land in one school district were paid in error over an unstated number of years to and received by another school district. After learning about the error the plaintiff sued to recover the taxes that should have been paid to it. The circuit court dismissed the case and the Supreme Court of Missouri affirmed. In its opinion, that court discussed several cases in detail, including the
 
 Fall River
 
 case.
 
 Pleasant View
 
 ,
 
 341 S.W.2d at 859-860
 
 . The Missouri court quoted in length from a dissent in
 
 School District No. 8, Shawnee Tp. Wyandotte County v. Board of Education of Kansas City
 
 ,
 
 115 Kan. 806
 
 ,
 
 224 P. 892
 
 , 894, (1924), where the dissenting judges opined that because the award to that plaintiff was based on an error six years earlier, and because populations are subject to change, the award to the plaintiff would cause taxpayers to suffer "who were not benefited by the assessor's mistake, and taxpayers will be benefited who did not suffer." The dissenters continue, "The whole matter is stale, and the court's decision will create precisely the kind of disturbance which, as a matter of public policy, the Legislature undertook to prevent."
 

 ¶ 12 Stroud cites three Oklahoma cases that it claims supports its argument for requiring Cushing and Wellston to pay the improperly disbursed tax revenues to Stroud. In
 
 Board of Commr's of Carter County v. Joint Sch. Dist. No. 34
 
 ,
 
 1928 OK 709
 
 ,
 
 134 Okla. 140
 
 ,
 
 272 P. 468
 
 , tax money was collected by the county treasurer as taxes on real and personal property located in the plaintiff school district, and levied for the common school purposes therein. The county treasurer paid that money to other school districts. The school district sued the Board of Commissioners to recover the funds. The Court observed, "The assets of the county were in no way increased by the mistake of the county treasurer in apportioning the taxes to the wrong school district." The Court added the commissioners had nothing whatever to do with the apportionment of taxes collected by the county treasurer for common school purposes and the Court saw no reason why the county should be compelled to make restitution.
 
 Carter County
 
 ,
 
 1928 OK 709
 
 , ¶ 14,
 
 272 P. at 469
 
 .
 

 ¶ 13 Stroud cites the next paragraph,
 
 Carter County
 
 ,
 
 1928 OK 709
 
 , ¶ 15,
 
 272 P. at 469
 
 , in which the Court Commissioner
 
 [5]
 
 authoring the case speculates that the plaintiff should have sued the school district or districts that received its money or the county treasurer. From the text it appears no party was arguing that the school district or the county treasurer should be sued. Therefore, the Court's assessment is dicta, and the problem with dicta is that it is pronounced without an actual case in controversy. No party is making argument defending or opposing such a view. This speculation does not bind this Court nor any court of the state. Accordingly, it is not even persuasive support of Stroud's argument that where a school district has failed to receive its lawful share of tax revenues levied upon property within its district, it has a right to maintain a direct
 
 *697
 
 action against the school district wrongfully receiving those funds.
 

 ¶ 14 The second case cited by Stroud to support its viewpoint is
 
 In re Assessment of St. Louis-San Francisco Ry. Co.
 
 ,
 
 1926 OK 970
 
 ,
 
 120 Okla. 289
 
 ,
 
 251 P. 604
 
 , which was an appeal by the railway company where the State Board of Equalization assessed railway property that had been omitted from school district 27. However, the railway had been assessed and paid taxes to school districts 39 and 22, because the property was erroneously described as located within those two districts. The railway perpetrated no fraud, nor did that company benefit from the error in any way. The Supreme Court Commissioners reversed the order of the State Board of Equalization because the railway company had been taxed and paid the taxes. However, again the Court Commissioner who authored the opinion, included dicta that "We know of no reason why an accounting may not be had between these districts and the mistake adjusted."
 
 In re Assessment of St. Louis-San Francisco Ry. Co.
 
 ,
 
 1926 OK 970
 
 , ¶ 6,
 
 251 P. 604
 
 , 606. This dicta does not support Stroud's argument that Oklahoma law is on point with the facts now before this Court.
 

 ¶ 15 Finally, in the third case,
 
 Board of County Comm'rs v. School District No. 19
 
 ,
 
 1926 OK 512
 
 ,
 
 119 Okla. 20
 
 ,
 
 248 P. 324
 
 , involved a dispute as to how to divide the ad valorem and gross production taxes between two schools in a segregated school system, and if those taxes had been legally divided. The trial court granted judgment in favor of the plaintiff school district. The case decided by a Supreme Court Commissioner, whose order was confirmed by the Supreme Court, held that money set apart for public school purposes under our Constitution could not be diverted to any other use, so that the money must be paid over to the school district from the county treasurer, who had refused to pay it over. The facts are not in any way similar to the case now before this Court, and is not authority for Stroud's viewpoint.
 

 ¶ 16 In its Brief in Chief, Stroud admits that a school district in Oklahoma typically receives greater State Aid in proportion to decreased ad valorem revenue, and that its State Aid would have decreased under the Oklahoma school funding formula if Stroud had received the misdirected tax revenues erroneously paid to Cushing and Wellston. Stroud also admits that Cushing and Wellston would most likely have received greater State Aid had the misdirected tax revenues been included in Stroud's Estimate of Needs submitted to the State Board of Education.
 
 [6]
 
 After detailing the dollar amounts received compared to what the school districts should have received, the trial court in its October 31, 2016, Journal Entry of Judgment found, and based on uncontroverted facts, concluded that Stroud received twenty-six cents more in State Aid than it otherwise would have due to the erroneous apportionment.
 
 [7]
 
 Accordingly, Stroud did not suffer any monetary loss to its general fund as a result of the erroneous apportionment.
 

 ¶ 17 Stroud received the taxes from the property identified as within its district; Cushing received the taxes from the property identified as within its district; and Wellston received the taxes from the property identified as within its district. Stroud received the same amount for its general funds that it would have received had the ad valorem taxes been properly allocated. Nevertheless, it demands additional funds from Cushing and Wellston that it would have received if the real property had been correctly identified. But if that amount is paid to Stroud, then Cushing and Wellston would have deficits in those districts that they would not have if the real property had been correctly identified. However, Stroud does not believe the other two school districts are entitled to a setoff if they pay Stroud the misallocated ad valorem taxes. All three school districts were victims of this error, but as it stands now, no district failed to receive the funds needed for their respective districts.
 

 ¶ 18 When a school district submits its Estimate of Needs for the year, which is based on projected tax revenues, and receives the funds it anticipated, that district is not entitled to subsequent repayment from
 
 *698
 
 another school district, which, due to no fault of its own, received funds that should have been paid to the first school district.
 

 ¶ 19 As explained in Cushing's and Wellston's motion for summary judgment, the rationale found in the
 
 Fall River
 
 case acknowledges and accepts that county and state officials will make mistakes in the taxing of property and the distribution of taxes.
 

 CONCLUSION
 

 ¶ 20 The judgments against the Cushing and Wellston school districts in favor of the Stroud school district are reversed. Each party shall bear its own attorney fees. This cause is remanded for disposition consistent with the views expressed in this opinion.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 Combs, C.J., Winchester, Edmondson, Colbert, Reif, JJ.-Concur
 

 Gurich, V.C.J., Wyrick, J.-Concur in Judgment
 

 Kauger, J.-Concurs in Result
 

 Darby, J.-not voting
 

 [1]
 

 Independent School District No. 54 of Lincoln County, Oklahoma a/k/a Stroud Public Schools, Plaintiff/Appellant.
 

 [2]
 

 Independent School District No. 67 of Payne County, Oklahoma a/k/a Cushing Public Schools; Independent School District No. 4 Of Lincoln County, Oklahoma, a/k/a Wellston Public Schools, Defendants/Appellees.
 

 [3]
 

 Deposition of Joe Van Tuyl, page 86, lines 19-21.
 

 [4]
 

 The trial court explained, "Under Oklahoma's state aid equalization formula, the amount of state aid is determined using three separate components: (a) Foundation Aid, (b) Transportation, and (c) Salary Incentive Aid. Of these three components, only two-Foundation Aid and Salary Incentive Aid-are impacted by the anticipated revenues of taxable property in a school district." October 31, 2016, Journal Entry of Judgment, page 4.
 

 [5]
 

 Beginning in 1911, the Legislature authorized the Supreme Court of Oklahoma to appoint Commissioners, possessing the qualifications required for justice of the Supreme Court. Subsequently, the Commissioners were appointed in different methods, including appointment by the governor with the consent of the Supreme Court. The Supreme Court Commissioner system ended in 1959.
 
 Oklahoma Almanac 2015-2016
 
 857-858 (Oklahoma Department of Libraries, 55th ed. 2015).
 

 [6]
 

 Brief-in-Chief of Plaintiff/Appellant, page 23, footnote 6.
 

 [7]
 

 October 31, 2016, Journal Entry of Judgment, item 16, page 7.